# APPLICATION

# FOR OPENING OF AN ACCOUNT

# AND

# GENERAL CONDITIONS



**Lloyds Bank International Private Banking**

---

### ZURICH

Lloyds Bank Plc - 18, Goethestrasse - P.O. Box 4722 - CH 8022 Zurich - Tel. (01) 265 21 11

**Exhibit F**

# IMPORTANT NOTICE

By signing this application to open an account the Customer confirms having read in totality, examined and approved without reservation the General Conditions herein, which form an integral part of the contractual relationships which bind the parties.

In particular the Customer's attention has been drawn to the paragraphs printed in bold characters as well as certain paragraphs assigning specific authorities to the Bank, for which the Customer's signature must additionally be affixed in the margin of each relevant article; the following are those articles to which the Customer's express agreement is given in addition to the general acceptance of the General Conditions:

1. Power of attorney relating to fiduciary deposits abroad and money market funds (Art. 2)
2. Management authority for securities with postponed printing of certificates (Art. 3, para. 4)
3. Proxy for general meetings (Art. 3, para. 7).

Should any one of the above-mentioned clauses not be signed by the Customer as accepted, then such clauses will not be binding on the Customer's or the Bank's behalf.

On the other hand, all other clauses will be deemed to be accepted by the Customer, as soon as the latter has signed the application to open an account.

**This document is a translation, in case of dispute, the French or German versions of this agreement which are held at your disposal, will be applicable.**

LLOYD_000004

# APPLICATION TO OPEN AN ACCOUNT

I/we the undersigned apply to open an account with **LLOYDS BANK Plc** [hereinafter *"the Bank"*]. The relationship between *the Bank* and me/us [hereinafter *"the customer"*] are governed by the

# GENERAL CONDITIONS

the text of which follows below and which will be applicable thereto in the absence of any agreement of derogation or specific banking practices:

**Article 1: Current and other accounts**

1. *The Bank* undertakes to maintain accounts in freely negotiable currencies of its choice. It credits and debits interest and agreed or normal commissions and charges, also taxes, quarterly, semi-annually or annually, as it may decide.

2. Conditions applicable to certain types of account, particularly those referring to withdrawals and notice required therefore, are subject to changes which will be notified to *the customer* by all appropriate means, as will interest rates and commissions in the case of fluctuations on the money market.

3. In the case of various instructions from *the customer* involving a total which exceeds the available amount or any credit granted, *the Bank* is authorized to establish at its discretion which instructions are to be carried out, without reference to the date which they bear or on which they were received. It is expressly authorized, if it considers it preferable, to carry out all *the customer's* instructions, even if the account is thereby put in debit.

4. Funds received in a currency for which no account is held will be converted and credited to the Swiss Franc or another account which may exist or may be held in the currency which is received, as the Bank may judge preferable. If instructions are received for transfers or payments in a currency for which no account exists, *the Bank* may, in the absence of precise instructions, carry them out by debiting any account, as it may judge preferable.

5. The word "francs" which may figure in *the Bank's* correspondence with its customers refers, unless specified otherwise, to Swiss Francs.

6. If withdrawal from a deposit account has not been effected within two weeks after the expiry of the notice given, the latter is considered cancelled and the amount in question is not entitled to interest for those two weeks.

7. The counterpart of customers' holdings in foreign currencies is deposited in the same currency, in or outside the relative domicile of the currency in question, with *the Bank's* correspondents. Any official regulations or restrictions which may affect the assets of *the Bank* in the country where the currency is domiciled or where the assets are deposited equally affect the assets of *the customer.*
*The customer* may dispose of his assets in foreign currencies by means of payment orders or the purchase of cheques in the currency of the account; other methods require the consent of *the Bank*. For cash deposits or withdrawals in foreign currencies *the Bank* charges a commission.

8. A customer to whom *the Bank* has issued cheque forms undertakes to conform to the conditions for their use which accompany them and to advise *the Bank* immediately in the case of their being lost or stolen, *the customer* being liable for any prejudice or loss resulting therefrom. *The customer* is also liable for the consequences of a missing or unclear designation of the currency on the cheque.
When the account is closed *the customer* must return all unused cheque forms to *the Bank*. A customer may only draw a cheque on *the Bank* if he has the required amount on his account.

9. If bills of exchange, cheques or other instruments that are presented for collection or that have been discounted are not paid or the product is not freely available, *the Bank* may debit the relative amounts credited while retaining until any such debt is discharged, all the rights based on the instruments in question.

### Article 2: Power of administration for fiduciary deposits abroad and money market funds

1. *The customer* authorizes *the Bank* to use all or part of the funds held by it to make, as it judges best, fiduciary deposits abroad. Those deposits are made by *the Bank*, in its own name, but at *the customer's* risk, with branches or subsidiaries of the Lloyds Bank Plc group or other banks abroad, in the currency and at conditions which *the Bank* may regard as favourable.

2. *The Bank* is not obliged to use its Power and *the customer* has the right to give specific instructions to *the Bank* regarding any such deposits.



Agreed signature:

Covers entire article 2

3. The currency, the amount, the debtor and conditions for each deposit are fixed either by *the Bank* as it sees fit, or by *the customer* when the latter defines them in a special instruction. Any instruction regarding existing deposits must reach *the Bank* at least five working days before the date of maturity, failing which *the Bank* will decide at its discretion on the need for an eventual renewal or a new deposit.

4. *The customer* puts the necessary funds at the disposal of *the Bank* before any fiduciary operation and authorizes *the Bank* to debit the relative amounts to the account. These amounts will be booked in a "fiduciary account" and the resulting interest credited to *the customer's* account.

5. *The customer* can cancel this Power of Administration at any time without, however, such cancellation affecting any current operations, in respect of which *the Bank* will act in *the customer's* best interests until the expiry of the contracts. In the absence of any cancellation this Power of Administration maintains its validity even in the case of the death, legal incapacity or bankruptcy of *the customer*.

6. *The Bank's* sole obligation is to transfer to *the customer* sums becoming available from repayment of capital and payment of interest. If the institution abroad does not meet its obligations wholly or in part, *the Bank* is released by ceding to *the customer* the claims it holds on his behalf. *The Bank* is not bound to perform any other duties in this respect. *The customer* discharges *the Bank* from any responsibility in connection with any operations *the Bank* may be called to undertake under this Power of Administration.

7. *The customer* undertakes to pay to *the Bank* the usual commission applicable at the moment of the operation, this to be calculated on the basis of the amounts deposited with institutions abroad and to be charged without reference to interest payments.

8. Instead of fiduciary deposits, *the Bank* is authorized, if it so chooses, to take all or part of the funds in current account and place them in investment funds managed by the Lloyds Bank Plc group the object of which is to make investments in short-term instruments in the money market and/or in inter-bank deposits.

### Article 3: Deposit of securities

1. *The Bank* undertakes to keep in custody all securities in open deposit, in a secure place, with the same care as for the securities it holds for its own account.

2. *The Bank* is, however, authorized to deposit the securities with its correspondents in Switzerland or abroad, in its own name but at the risk and peril of *the customer*; in this case the securities are administered by the correspondent in accordance with the customs and laws of the place of safe-keeping, *the Bank's* charges being subject to increases resulting from the commissions and expenses of its correspondents.

3. If *the customer* does not insist on his securities being held separately, and in that case accepts the relative charges, *the Bank* is expressly authorized to hold them in a general deposit for each category of security without listing the individual securities as belonging specifically to *the customer*, or to deposit them in a collective deposit centre; in this case *the customer* has a right of co-ownership proportional to the number of securities in the category in question which *the Bank* has registered in *the customer's* name. An exception is made to this rule in the case of securities which are registered in the name of a customer or for any other reason have to be held separately. When securities in collective deposit are the subject of a drawing by lot *the Bank* allots the securities drawn by making a secondary drawing in such a way as to guarantee equal chances to all those qualified.

— 4 —

*Agreed signature:* [signature]

*Covers article 3 §4*

4. *The Bank* also administers investments in the money and capital markets which are not represented by a certificate (in particular registered shares with postponed printing of certificates) and books them in open deposit. In the case where the printing of certificates is postponed, *the Bank* is authorized to request the issuing company to convert any existing securities held into registered rights that are not incorporated into a certificate and upon *the customer's* request to demand, at any time, as far as possible, that the issuing company prints and delivers the security certificates. For those securities for which certificates are only printed on application *the Bank* carries out all the necessary administrative procedures and gives all relevant instructions to the issuing company. This power of administration does not expire with the death, loss of civil rights or bankruptcy of *the customer*.

5. *The Bank* undertakes the usual administrative operations relating to securities it holds in open deposit, including presentation of coupons and receipt of dividends, drawings by lot, final or premature repayments etc. In addition, but without obligation, *the Bank* encourages *the customer* to protect his own interests by exercising his rights of subscription, conversion and option. In default of instructions, *the Bank* has the right to act according to its own judgement in the best interests of *the customer* without responsibility on its part.

6. *The Bank* guides its customers in the choice of investments and considers with them improvements which may be made as to the composition of their portfolios. At the request of *the customer the Bank* will undertake the full and discretionary management of a portfolio on the basis of a Management Authority to be signed separately.

*Agreed signature:* [signature]

*Covers article 3 §7*

7. *The customer* expressly authorizes *the Bank*, with the right of substitution, to represent *the customer's* securities at shareholders' general meetings, without it being obliged to do so. This authority does not expire with the death, loss of civil rights or bankruptcy of *the customer*. *The Bank* undertakes to inform *the customer*, unless they have already been reported in the press, of any particularly important items on the agenda. In other cases it will vote in favour of the proposals of the Board of Directors. *The customer* can at any time request the right to vote personally, provided eight days notice is given.

8. The deposit is made for an unlimited period. *The customer* can require its return at any time. Such return will take place as soon as *the Bank* receives the securities from its correspondents. *The Bank* can at any time demand, without giving reasons, the withdrawal of the deposit.

9. Purchases and sales of securities are carried out according to the customs of the place where they are made. Orders subject to cancellation or those unlimited in time which have not been carried out by the end of the month following that during which they were given, are automatically null and void.

### Article 4: Deposit of precious metals and coins

1. *The Bank* administers collective deposits of precious metals and gold coins which do not have a special numismatic value. On behalf of the owners of collective deposits, *the Bank* holds precious metals having at least the minimum alloy value in commercial use in an amount equal to that of *the customer's* holdings, in Switzerland or abroad, at its premises or with third parties. In the latter case such deposits with third parties are made in *the Bank's* name but for the account of, and at the risk of, *the customer*. Each customer is co-owner of the collective deposit in proportion to the participation of each one therein.

2. Assets in precious metals are booked by *the Bank* in function of either the number of fungible units, such as ingots, or the fine weight.

3. *The customer* can at any time withdraw and have delivered to him the quantity of precious metal equivalent to his portion held in the collective deposit. In default of any other agreement the place of execution is *the Bank*. All expenses and risks arising from delivery elsewhere are to be borne by *the customer*.

4. The metal delivered corresponds to the number of fungible units booked. In the case of deposits expressed in units of fine weight, *the Bank* is authorized to deliver ingots of any weight having at least the minimum alloy value in commercial use and to invoice the cost of making the ingots. Any difference in weight which may still arise can be made good, at the choice of *the Bank*, by additional small fungible units or by cash based on the price of the precious metal at the appropriate stock exchange at the moment the transaction advice is issued. *The Bank* must be given one week's notice for large withdrawals.

5. Gold coins without special numismatic value are held in collective deposits for each type of coin. *The customer* is assured when they are returned of the delivery of coins of the same type, and of a quality corresponding to market conditions. *The customer* cannot demand the delivery of coins of a particular year or a specific minting.

LLOYD_000007

6. There are special reservations regarding cases where *the customer* requires his assets to be held in a separate individual deposit and will bear the eventual additional costs. In addition where closed items (parcels, envelopes etc.) are deposited with *the Bank*, they must be sealed in such a way that it is impossible to open them without breaking the seal. They must not contain objects which are dangerous or which are not suitable to be held by *the Bank* which is only responsible for any damage resulting from its own fault and proved so to be by *the customer* and then only to the extent of the value declared by *the customer* when the object was deposited. In all cases, *the Bank* is not responsible for any damage due to atmospheric conditions. Safe custody charges will be fixed in each case according to the nature and value of the objects held. When the object is withdrawn from deposit, any eventual damage to the seal or the package must be reported immediately. The receipt signed by *the customer* relieves *the Bank* definitively of all responsibility.

**Article 5: Payment for the Bank's Services**

The services rendered by *the Bank* are paid for according to the tariffs it lays down. In particular *the Bank* is authorized to debit safe custody charges, commissions and usual charges.

**Article 6: Signatures**

1. Only those signatures communicated in writing to *the Bank* are valid for dealings until written notification of revocation, *the Bank* not being bound by official registrations or publications which may differ. When several people are authorized to sign, precise indications must be given as to whether each signature is valid individually or if several signatures together are required. In default of any such indication *the Bank* considers that each person whose signature is on the signature card is authorized to sign alone.

2. Should, however, at any time, as a result of death, cancellation, revocation, resignation or any other reason, a signatory with a collective signature remain the only person whose signature remains on the signature card then this signature will be sufficient in all cases to give a valid discharge to *the Bank*.

3. *The Bank* verifies the authenticity of the signatures in the usual way, that is by comparing signatures presented to *the Bank* with those deposited on the signature cards. *The Bank* accepts no responsibility for any loss which may result from forgery or mistakes which a normal verification could not be expected to reveal.

4. Any loss resulting from the legal incapacity of a customer or a third party is *the customer's* responsibility unless notice thereof has already been given in writing to *the Bank*.

**Article 7: Instructions given by telephone, telex and telefax**

1. *The Bank* accepts instructions by telephone from *the customer* and carries them out without awaiting written confirmation, which in certain cases will not be given. *The customer* accepts the risks inherent in this procedure, particularly those which may result from a mistake in transmission or comprehension, or mutilation or duplication of instructions. *The customer* discharges *the Bank* in advance from any responsibility for any problem which may result from this procedure. The same applies to instructions which *the Bank* may receive by non-tested telex or by telefax, but *the Bank* reserves the right to refuse to accept these means of communication.

2. *The Bank* may, without being obliged to, demand any necessary details needed to identify the person who telephones, but in no case can *the Bank* be held responsible in the case of an unauthorized person making improper use of this procedure. Any falsification of identity is the sole liability of *the customer*. This procedure is opposable by *the Bank* in relation to a customer or a customer's authorized representative, whether the message has been transmitted by telephone, telex or telefax.

LLOYD_000008

3. *The customer* undertakes to accept all operations executed in this way by the debit of *the customer's* account and to provide the cover necessary for any debit balance which may result therefrom.

4. This procedure is valid until written cancellation thereof by *the customer* or, if relevant, the *customer's* heirs.

5. *The customer* accepts that *the Bank* reserves the right to decide, at any time, to record telephone conversations held between *the Bank* and *the customer* or *the customer's* legal representative regardless which party initiated the call, the sole purpose being to verify the accuracy of instructions given to *the Bank*. In case of dispute *the customer* will of course be able to listen to these recordings. *The Bank* will take all necessary measures to ensure the confidentiality of such recordings.

### Article 8: Communications with the Bank

1. Communications from *the Bank* are deemed to be effected as soon as they are sent to the last address indicated by *the customer*. The date on the copy held by *the Bank* is deemed to be the date of despatch.

2. *The Bank* sends statements of their assets to customers from time to time. If *the customer* has not notified any objection within four weeks of despatch the statement is deemed to be accepted as correct. The tacit or stated acceptance of a balance implies the approval of all the items figuring on the statement during the period it covers as well as of any reservations of *the Bank*.

3. If *the customer* instructs *the Bank* to hold all correspondence, it is unconditionally deemed to have been delivered at the date indicated on each item of correspondence. All risks which may result from this arrangement including the risk of late claims are assumed by *the customer* who has a duty to call regularly and collect the correspondence held by *the Bank* and who, at any time, will be requested to sign and return conformity statements of the balance of his accounts unless this has already been done within the previous six months. In the absence of any other agreement, *the Bank* is authorized, but not obliged, to take any steps it considers appropriate with regard to correspondence it may receive for account of *the customer*, in order to protect his interest. *The Bank* is expressly discharged of any responsibility and it is authorized to destroy correspondence held under this arrangement after three years.

4. If an account is opened and maintained under a code or number, on the sole instructions, and at the risk and peril of *the customer*, correspondence referring thereto will be deemed to have been sent to *the customer* as if it had been addressed to *the customer* by name.

### Article 9: Pledge and Right of Set-off

1. By signing these General Conditions *the customer* assigns and pledges to *the Bank* in conformity with the law and the following conditions, as a guarantee for any claims present or future which *the Bank* may have against *the customer* in the course of their banking relationships, all assets entrusted to it in any type of account, either at its premises or at its head office or other branches, or held for *the customer's* account in *the Bank's* name at any other place.

2. The assets thus pledged and assigned comprise all *the customer's* assets entrusted to *the Bank*, such as for example, precious metals, securities, shares, certificates of claims and participations, claims resulting from non-individualized deposits, all other claims, fiduciary deposits, assets in Swiss Francs as well as in foreign currencies or their counter-value in Swiss Francs deposited with *the Bank* or in its name with third parties, including interest, dividends and other rights, matured or not.

3. In the case of changes in the composition of *the customer's* assets, the new items are automatically covered, in the place of the previous ones, by this pledge which comes into force automatically each time *the Bank* has a claim against *the customer*. *The customer* further undertakes to collaborate in the transfer of the pledged assets by carrying out, where necessary, endorsements and assignments required for the transfer. *The Bank* has the right at all times to have handed over to it assets pledged in its favour but held by third parties.

— 7 —

LLOYD_000009

4. If the value of the pledged assets falls below the agreed or usual margin, *the customer* will be required, with two weeks' notice, either to reduce the amount of the debt outstanding or to provide additional security. If this is not done within the time limit granted, or in the case where it were impossible for *the Bank*, for exceptional reasons, to inform him of such a situation, the whole amount of the debt becomes payable immediately.

5. If the claim does thus become payable, *the Bank* is authorized to realize all or part of the assets pledged without any other notice and without following the prescribed legal procedure, and in the way, manner or order and within a time-scale which it may decide, through a Stock Exchange or over-the-counter, such assets having been duly assigned to *the Bank* by the signature of these General Conditions, any uncovered debit balance remaining a liability of *the customer*.

6. Notwithstanding this pledge in favour of *the Bank*, it is *the customer's* own duty to supervise all operations such as drawings by lot, final or premature repayments and others, unless *the Bank* finds it necessary, and chooses to carry out this supervision itself for its own protection.

7. *The Bank* also has the right at any time to set-off assets between *the customer's* accounts, held under whatever account or type of account and in whatever currency they may be named, but it also reserves the right to consider each balance separately.

### Article 10: Options and forward operations

1. In the case of forward dealing in precious metals, currencies, raw materials and securities and of all types of options which *the Bank* may be required to carry out on the instructions of *the customer*, the latter confirms being fully aware of the high degree of risk in such investments and undertakes to provide to *the Bank* the margins which it may at its discretion demand.

2. Such a margin as guarantee corresponds to a certain percentage, fixed by *the Bank*, of the amount involved in the operation. *The Bank* is authorized to modify this percentage at any time without notice. It also has the right to demand additional security if the value of the margin has diminished.

3. If *the customer* does not give effect to the margin calls within the time limit set, *the Bank* may, at its choice, either debit *the customer* or close out, without further notice, all or part of the current positions, even if this results in a loss for *the customer*.

4. If the margin proves insufficient to cover such a loss, *the Bank* is authorized, but not obliged, to realize immediately and without notice all or part of *the customer's* assets.

5. The assets used to cover the margin are considered to be pledged as security to *the Bank*. In addition the terms of Article 9 are applicable.

### Article 11: Special Conditions

1. *The Bank* does not assume any responsibility for any loss resulting from the use of postal services, telegrams, telephone, telex, telefex or any other means of transmission or of a transport company. In particular *the customer* is responsible, except in the case of gross negligence on the part of *the Bank*, for all losses resulting from mistakes, delays, losses, misunderstandings, mutilations or duplicated despatches.

2. If a loss is due to the non-execution or delayed execution of an instruction which is the fault of *the Bank*, the latter will only accept liability for loss of interest unless, in a particular case, it has been warned in writing of the risk of a greater loss. This condition does not refer to stock exchange orders.

3. *The Bank* is not obliged to accept funds which reach it with an inexact or incomplete denomination of the account to be credited. It can, at its discretion, return or accept them and does not assume, in either case, any responsibility.

4. Any claim by *the customer* regarding any action of *the Bank* must be presented on receipt of the relevant advices and at the latest within four weeks. In default of any claim, advices and communications are deemed to be approved. If *the customer* does not receive an advice which may be expected from *the Bank*, then *the customer* must make a claim at the moment when such an advice should normally have been received. *The customer* is liable for any loss resulting from a delay in claiming.

LLOYD_000010

5. In all relations between *the Bank* and *the customer* Saturday is deemed to be a public holiday.

6. *The Bank* has the right at any time to end its relationship with *the customer* and in particular to cancel credit lines promised, granted or used, in which case the repayment of any claim will become due within the time limit fixed by *the Bank*.

7. *The Bank* reserves the right to modify these General Conditions at any time. Such modification will be notified to *the customer* by all appropriate means. In default of any contestation within four weeks they will be deemed to be approved.

### Article 12: Complementary Conditions

1. In addition to these General Conditions, which apply automatically to all relations between *the customer* and *the Bank*, certain spheres of activity are governed by special conditions. This is the case notably for powers of administration, powers of attorney, joint accounts, rental of private safes.

2. Furthermore stock exchange and foreign exchange operations are subject to the customs of the market where they take place. Documentary credits are governed by the Uniform Customs and Practices of the International Chamber of Commerce. Collections and discount operations are governed by the General Conditions of the Swiss Bankers' Association.

### Article 13: Applicable law and jurisdiction

**All relations between *the customer* and *the Bank* are governed by Swiss law. The place of business of the branch of *the Bank* which is in relationship with *the customer* is the place of performance, the place for special proceedings for the collection of debts owed by *customers* domiciled abroad, and the place for all proceedings. *The Bank* nevertheless retains the right to bring proceedings to the domicile of *the customer* or before any other competent authority, in which case Swiss law shall remain applicable.**

LLOYD_000011

## ACCOUNT HOLDER(S)

Surname(s) / Registered name
- ρ _Reyes_
- γ _Reyes_

Christian name(s) / Type of Company
- ν _Catherine_
- ν _Juan_

Nationality(ies) / Registered Office
- ρ _USA_
- γ

Profession(s) / Main activity
- ν _Physician_
- ν

Place(s) and date(s) of birth / Date of incorporation
- ν _CR  3/21/42_
- ν _JDR  11/10/32_

Marital status(i)
- ν _married_
- ν _married_

Legal address / Corporate address
- ν
- ν

Address for mail
- ν
- ν

☐ All communications to be held, by the bank, subject to Article 8 of the General Conditions

Telephone Number(s) Private ρ _718 793 7075_   Professional ρ _718 963 2215-6_

Telex Number(s) _718 575 4197_   Telefax Number(s)

Identity document(s) / Corporate documents produced
(copy of passport)

References

— 10 —

LLOYD_000012

## Opening of an account

Type: ☑ Nominative    Signing Powers: ☐ Individual
☐ Mail Code    ☑ Joint (individual signatures)
☐ Collective: any _____

Currency(ies): ☐ Swiss Francs    ☐ Pounds Sterling
☐ US Dollars    ☐ French Francs
☐ Deutsche Marks    ☐ _____

Correspondence in ☑ English  ☐ French  ☐ German

Special Instructions _____

_____

_____

The undersigned account holder(s) accept(s) without reservation the above-mentioned General Conditions.

Date and place _72 Dartmouth St Forest Hills NY USA 11375_

Signature(s) of the account holder(s) _Catherine Reyes / Juan D Reyes_

*Please also sign in margins on page 4 and 5.*

---

**For Bank use only**

Name of Account _Mrs Catherine Reyes f/or Mr. Juan Reyes_

Basic number ███ 250    Account(s) number(s)

Base and performance currency (in letters) _USD_

Account executive code _117_

Name and signature of the account executive _P. HAFNER H004_

— 11 —