

**Department of the Treasury**
**Internal Revenue Service**
**Small Business/Self Employed**
211 W Wisconsin Ave, Mail Stop 1210
Milwaukee WI  53203-2221

Date:
07/06/2018

Filer ID number:
███0937

Form:
T D F 90-22.1/FINCEN 114

Calendar years:
2010, 2011, 2012

Juan Reyes
72 Dartmouth St
Forest Hills, NY  11375-5142

Person to contact:
Kimberly Nguyen

Contact telephone number:
414-231-2292

Contact fax number:
877-451-5551

Employee ID number:
1000889702

Refer reply to:
Group 1210 MIL

Response due date:
August 6, 2018

**Exhibit**
DD

Dear Juan Reyes:

**Why you are receiving this letter**
We're proposing a penalty for violating the reporting or record keeping requirements for foreign financial accounts. We checked the box for the penalty paragraphs that apply to you. Review this proposed penalty and let us know if you agree by following directions at the end of this letter. We enclosed a summary memorandum describing the violations. The summary also includes a penalty calculation.

**Proposed assessment (See the checked box and attached Form 13449)**

[x] We're proposing a penalty under 31 U.S.C. § 5321(a)(5) for failing to meet the filing requirements of 31 U.S.C. § 5314. A United States person is required to file FinCEN Report 114 (formerly Form TD F 90-22.1), *Report of Foreign Bank and Financial Accounts (FBAR)*, with the Financial Crimes Enforcement Network (FinCEN) by June 30th of the following year if he or she has a financial interest in (or signature authority over) one or more foreign financial accounts whose aggregate balance exceeds $10,000 at any time during the calendar year.

  [ ] For a non-willful failure to file a complete and accurate FBAR, the maximum penalty is $10,000 per violation.

  [x] For a willful failure to file a complete and accurate FBAR, the maximum penalty is the greater of 1) $100,000 or 2) 50% of the balance in the account at the time of the violation, for each violation.

[ ] We're proposing a penalty under 31 U.S.C. § 5321(a)(5) for failing to meet the record keeping requirements under 31 U.S.C. § 5314. A United States person is required to keep certain records of foreign financial accounts and their maximum value during the year if he or she has a financial interest in (or signature authority over) one or more foreign financial accounts whose aggregate balance exceeds $10,000 at any time during the calendar year.

  [ ] For a non-willful failure to meet the record keeping requirement, the maximum penalty is $10,000 per violation.

  [ ] For a willful failure to meet the record keeping requirement, the maximum penalty is the greater of 1) $100,000 or 2) 50% of balance in the account at the time of the violation.

Letter 3709 (Rev. 9-2015)
Catalog Number 36614Q

REY 000256

☐ We're proposing a penalty under 31 U.S.C. § 5321(a)(6)(A) for negligent failure to meet the filing requirements for financial institutions or non-financial trades or businesses under 31 U.S.C. § 5314 and 31 C.F.R. § 1010.350 . The maximum penalty is $500.

☐ We're proposing a penalty under 31 U.S.C. § 5321(a)(6)(A) for negligent failure to meet the record keeping requirements for financial institutions or non-financial trades or businesses under 31 U.S.C. § 5314 and 31 C.F.R. § 1010.420. The maximum penalty is $500.

☐ We're proposing a penalty under 31 U.S.C. § 5321(a)(6)(B) for a pattern of negligent violations of any provision of 31 U.S.C. § § 5311-5332 and the regulations under them. The penalty will be in addition to any penalties imposed under 31 U.S.C. § 5321(a)(6)(A), but the maximum penalty is $50,000.

**If you agree**

If you agree to the assessment and collection of the proposed penalties, please sign, date, and return the enclosed Form 13449, *Agreement to Assessment and Collection of Penalties Under 31 USC 5321(a)(5) and 5321(a)(6),* in the envelope provided by the response due date, which is 30 days from the date of this letter. Make your check or money order payable to the United States Treasury for the amount indicated on the agreement form. If you agree but can't pay in full, pay what you can with the Form 13449 by the response due date and we'll send you a bill for the remaining amount with information on your payment options. We enclosed Notice 1330, *Information on Making FBAR Penalty Payment by Check.*

**If you disagree**

If you don't agree to the assessment and collection of the proposed penalties, you can request a conference with our Appeals Office. To do so, mail your written protest to the address shown at the top of this letter. Direct your letter to the attention of the person listed as the "Person to contact" at the top of this letter. We must receive your protest by the response due date, which is 30 days from the date of this letter. Include the following in your written protest:

1. A request for conference;
2. Your name, address, and daytime telephone number;
3. Your social security number, individual taxpayer identification number, or employer identification number;
4. The date and number of this letter;
5. The calendar years involved;
6. The penalties you're contesting;
7. An explanation of why you contest those penalties, including any reasonable cause explanation;
8. All information pertinent to your position;
9. If applicable, a statement of law or other authority that you relied on, and how that law or other authority applies to your case; and
10. The following signed statement: "Under penalties of perjury, I declare that I have examined the facts presented in this statement and any accompanying information, and, to the best of my knowledge and belief, they are true and complete."

**Note:** If you're a representative submitting a protest on behalf of another person, you should substitute a statement that you prepared the protest, and that you know personally the statement of facts contained in the protest are true and correct. Generally, you can rely in good faith on information your client provides. However, you must ask reasonable questions if the information appears to be incorrect, inconsistent, or incomplete.

Letter 3709 (Rev. 9-2015)
Catalog Number 36614Q

**If you do nothing**
If you don't take any action by the response date listed at the top of this letter, we'll assess the penalty and begin collection procedures.

If you have questions, contact the person listed at the top of this letter.

Thank you for your cooperation.

Sincerely,

Erik Anderson
Group Manager

Enclosures:
Form 13449
Summary memorandum
Notice 1330
Envelope

**Letter 3709 (Rev. 9-2015)**
Catalog Number 36614Q

REY 000258

| Form **13449** (May 2015) | Department of the Treasury - Internal Revenue Service<br>**Agreement to Assessment and Collection of Penalties Under 31 USC 5321(a)(5) and 5321(a)(6)** |
|---|---|

Name of account holder

Juan Reyes

Social security number (SSN) or Employer identification number (EIN)

███0937

Address of account holder *(Number, Street, City or Town, State, ZIP code)*
72 Dartmouth St
Forest Hills NY 11375

**Definition of Penalty Statutes**

1. **Foreign Financial Agency Transaction Violation** — willful failure to meet recordkeeping requirements and/or report a foreign account on FinCEN Report 114, Report of Foreign Bank and Financial Accounts (FBAR): 31 USC 5321(a)(5) and 31 CFR sections 1010.350, 1010.420 and 1010.820(g)(2)

2. **Foreign Financial Agency Transaction Violation** — non-willful failure to meet recordkeeping requirements and/or report a foreign account on FinCEN Report 114, Report of Foreign Bank and Financial Accounts (FBAR): 31 USC 5321(a)(5) and 31 CFR sections 1010.350, 1010.420 and 1010.820(g)(2)

3. **Negligent Failure to Report:** 31 USC 5321(a)(6) and 31 CFR sections 1010.350 and 1010.820(h)

4. **Negligent Failure to Meet Recordkeeping Requirements:** 31 USC 5321(a)(6) and 31 CFR sections 1010.420 and 1010.820(h)

5. **Pattern of Negligent Activity:** 31 USC section 5321(a)(6)(B)

**TOTAL** proposed penalty *(from Page 2 of 2)*    $ 516065

**Signature Authorization**

I consent to the immediate assessment and collection of the penalty amount specified above plus any interest and penalty as provided by law.

| Your signature | Date signed |
|---|---|
| | |

| Representative's signature *(valid only with Power of Attorney attached)* | Date signed |
|---|---|
| | |

Name of entity *(for corporations, partnerships, trusts, etc., when EIN specified above)*

| Signature of authorized officer | Title | Date signed |
|---|---|---|
| | | |
| Signature of authorized officer | Title | Date signed |
| | | |

| Name of examiner | Employee ID number | Date *(mmddyyyy)* |
|---|---|---|
| Kimberly Nguyen | 1000889702 | 07/06/2018 |

Office of examiner
Midwest Exam, Milwaukee Group 4316

| Name of supervisor | Employee ID number | Date *(mmddyyyy)* |
|---|---|---|
| Erik W. Anderson | 1000243511 | 07/06/2018 |

Office of supervisor
Midwest Exam, Milwaukee Group 4316

## Foreign Account Penalty Information

**Name of account holder**
Juan Reyes

**Account holder ID** *(EIN or SSN)*
[redacted]0937

### Foreign Account 1

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
| 2010 | Lloyds TSB Bank | [X] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |

| Maximum value of account | Foreign account number(s) | Amount of penalty |
|---|---|---|
| $ 2,161,500 | [redacted]250 | $ 172022 |

### Foreign Account 2

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
| 2011 | Lloyds TSB Bank | [X] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |

| Maximum value of account | Foreign account number(s) | Amount of penalty |
|---|---|---|
| $ 2,113,813 | [redacted]250 | $ 172022 |

### Foreign Account 3

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
| 2012 | Lloyds TSB Bank | [X] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |

| Maximum value of account | Foreign account number(s) | Amount of penalty |
|---|---|---|
| $ 2,113,485 | [redacted]250 | $ 172021 |

### Foreign Account 4

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
|  |  | [ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |

| Maximum value of account | Foreign account number(s) | Amount of penalty |
|---|---|---|
| $ |  | $ |

### Foreign Account 5

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
|  |  | [ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |

| Maximum value of account | Foreign account number(s) | Amount of penalty |
|---|---|---|
| $ |  | $ |

### Foreign Account 6

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
|  |  | [ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |

| Maximum value of account | Foreign account number(s) | Amount of penalty |
|---|---|---|
| $ |  | $ |

**TOTAL** proposed penalty *(Enter here and on Page 1 of 2)* $ 516065

Catalog Number 36612U    www.irs.gov    Form **13449** *(Rev. 5-2015)*

REY 000260

| Taxpayer Name: | Juan Reyes | Examiner: | Kimberly Nguyen |
|---|---|---|---|
| TIN: | ▮▮▮▮▮0937 | | |
| Tax Form: | TD F90-22.1/FinCen 114 | Date: | 1/2/2018, 2/7/2018, 5/10/2018 |
| Tax Year (s): | 201012, 201112, 201212, | | |

| FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet: | | | | |
|---|---|---|---|---|
| Tax Period | Previously Assessed | Per Exam | Adjustment | Reference |
| 201012 | | $172,022 | $172,022 | |
| 201112 | | $172,022 | $172,022 | |
| 201212 | | $172,021 | $172,021 | |

**Conclusion:** *(Reflects the final determination on the issue.)*

The Government concludes that willful blindness FBAR penalties apply in 2010 through 2012. The following factors demonstrate that Juan Reyes knew or had reason to know about the potential of a tax deficiency but chose to ignore it:

- **Juan Reyes failed to include income from his offshore account and asset on his 2005 through 2012 income tax returns.**
- **Juan Reyes failed to inform his tax preparer that he had ownership in foreign bank account or seek advice about any reporting requirements.**
- **Juan Reyes had significant amount of his financial assets at a Swiss branch of Lloyds TSB Bank.**
- **Juan Reyes has no personal or business connection to Switzerland to continue to have a bank account there.**
- **Juan Reyes established credit cards linked to the foreign bank to pay for their living expenses incurred in the United States.**
- **Juan Reyes is highly educated and has been in the United States for more than 40 years.**
- **Juan Reyes failed to properly complete Schedule B.**
- **Juan Reyes used an accountant to file 2005-2012 US Income Tax Returns. Juan Reyes signed the 2005 – 2012 federal tax returns, thereby declaring under penalty of perjury that he had "examined these returns and accompanying schedules and statements" and that to the best of his knowledge, the returns were "true, accurate, and complete."**

Based on the available facts, it is the Government's conclusion that Juan Reyes made a conscious, intentional decision not to learn about his FBAR filing requirements or to mention the foreign accounts and income to his preparer.

The statutory maximum willful blindness FBAR penalty under 31 U.S.C.§5321(a)(5)(C) is the greater of $100,000 or 50% of the balance in the account at the date of the violation (the FBAR filing deadline). The total willful blindness FBAR penalty for 2010-2012 per the method outlined in the IRM is $3,139,701. However, the Government believes that the penalty per the IRM is too severe. A more appropriate willful blindness FBAR penalty is $516,065 (50% of balance as of 6/30/2012, FBAR filing due date), spread evenly over 2010 through 2012, therefore the penalty in 2010 is $175,022; 2011 is $175,022 and 2012 is $175,021.

| Penalty_FBAR_Lead_Sheet_ Rev. 03/2012 | | Workpaper # | -1.1 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Juan Reyes | **Examiner:** | Kimberly Nguyen |
| **TIN:** | ███████0937 | | |
| **Tax Form:** | TD F90-22.1/FinCen 114 | **Date:** | 1/2/2018, 2/7/2018, 5/10/2018 |
| **Tax Year (s):** | 201012, 201112, 201212, | | |

## FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

**Facts:** (Document the relevant facts.)

1. An interview was held via teleconference on December 15, 2017. Mr. Juan Reyes, Mrs. Catherine Reyes, Representatives Mr. Douglas F Allen Jr. and Jonathan Wolfert, and agent Nguyen were on the phone.

2. Juan Reyes was born in Nicaragua in 1932, 85 years old. He is a naturalized U.S. citizen and citizen of Nicaragua. He grew up in Nicaragua. He attended medical school in Mexico from 1953 thru 1957. He returned to Nicaragua to work as a medical doctor. In 1960, he moved to The United States on a student visa for graduate training for general surgery. He finished his training in 1966. In 1965, he married Catherine Reyes, a U.S citizen. Juan Reyes, MD, specializes in General Practice and General Surgery and continues to work part time as a medical doctor in Brooklyn, New York.

3. Catherine Reyes, Juan's wife, was born in New York in 1942, 75 years old. She is a U.S. Citizen. She attended Hunter College in New York and received a Bachelor's degree in History. She works at her husband's medical office assisting with the billings. Her occupation on their Form 1040 is listed as "Housewife."

4. In the 1960s, there was rising opposition to the Somoza dictatorship in Nicaragua led by the Sandinista National Liberation Front (FSLN). By the early 1970s, the FSLN was involved in a campaign of kidnapping, violence, and civil war, leading to the ouster of the Somoza dictatorship in 1978-1979. In addition, a major earthquake in 1972 seriously damaged the country's economy, creating additional social unrest. Social unrest continued after the fall of the Somoza dictatorship and during the next twenty years of a communist government. Juan Reyes's family believed it was unsafe for him to return to Nicaragua at that time, as he was a member of a wealthy, upper class family.

5. In 1972, Juan Reyes parents opened bank accounts at the Nicaragua office of Banco de Londres America del Sur (Banco de Londres), with the expectation that monies would be safely held at that bank. His parents opened an account in his name and managed that account. As the political situation became more severe, his parents consulted with Banco de Londres, and decided for safety reasons to move the account to its London office. Banco de Londres became part of Lloyds Bank and ultimately Lloyd's TSB Bank plc. The account was then moved to Lloyds TSB Bank plc, Zurich and finally to Geneva, Switzerland. At the end of 2013, when advised of reporting and tax responsibilities, Juan Reyes closed the account and moved its balance to New York and then sought permission to enter the Offshore Voluntary Disclosure Program. Lloyd's TSB Bank discontinued its operation in Switzerland in 2014.

6. Juan and Catherine Reyes filed for Offshore Voluntary Disclosure Program on March 4, 2014.

| | | |
|---|---|---|
| Penalty_FBAR_Lead_Sheet_ Rev. 03/2012 | Workpaper # | -1.2 |

| | | | | |
|---|---|---|---|---|
| **Taxpayer Name:** | Juan Reyes | | **Examiner:** | Kimberly Nguyen |
| **TIN:** | ▬0937 | | | |
| **Tax Form:** | TD F90-22.1/FinCen 114 | | **Date:** | 1/2/2018, 2/7/2018, 5/10/2018 |
| **Tax Year (s):** | 201012, 201112, 201212, | | | |

### FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

7. Juan Reyes mother passed away in 1998 and his father passed away in 1999. Juan Reyes had control of the account in 1999. He was always aware of the account, he knew about the account his parents opened for him in 1972. He had no reason to move the funds to the United States. Taxpayer stated, he had always wanted to return to Nicaragua, but was unable to due to the political unrest. So, he left the account there. Per Taxpayer, no deposits were made to the account. In the early 2000s, credit cards were used to access the account to help with purchases and other expenses. Credit card accounts both domestic (Bank of America, Citibank, and Capital One Bank) and foreign (UBS Zurich) were utilized with the resulting bills being paid automatically by Lloyds TSB Bank.

8. After Juan Reyes had control of the account, he added his wife's name, Catherine, as a joint owner around year 2000. The bank statements from 2005 reflect the account titled under the name Mrs. Catherine Reyes &/OR Dr. Juan Reyes. The UBS AG credit cards are titled under Catherine Reyes' name. Also Mrs. Catherine and Juan Reyes pay "Keep Mail" fees every quarter.

9. Juan and Catherine Reyes' joint foreign financial account per the FBARs filed on 8/3/2014:

| Bank | Account | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|
| Lloyds TSB Bank | ▬250 | $2,218,026 | $2,216,997 | $2,161,500 | $2,113,813 | $2,113,485 |

1. Per Taxpayer, the account started with $200,000 in 1972.
2. The 2013 FBAR was filed timely and accurately.

10. Taxpayer had adjustments to taxable income during 2005 through 2012 as follows:

| Item/Issue | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|---|
| Interest Income | $65,578 | $104,856 | $111,838 | $88,562 | $79,954 | $57,250 |
| Qualified Dividends | $1,447 | $2,387 | $2,355 | $0 | $0 | $0 |
| PFIC Income | $40 | $309 | $780 | $14,851 | $17,096 | $463 |
| Total Tax | $15,959 | $28,460 | $30,563 | $4,200 | $5,034 | $13,161 |

| Item/Issue | 2011 | 2012 | TOTAL |
|---|---|---|---|
| Interest Income | $49,007 | $47,446 | $604,491 |

| | | |
|---|---|---|
| Penalty_FBAR_Lead_Sheet_ Rev. 03/2012 | Workpaper # | -1.3 |

| Taxpayer Name: | Juan Reyes | Examiner: | Kimberly Nguyen |
| --- | --- | --- | --- |
| TIN: | ████0937 | | |
| Tax Form: | TD F90-22.1/FinCen 114 | Date: | 1/2/2018, 2/7/2018, 5/10/2018 |
| Tax Year (s): | 201012, 201112, 201212, | | |

### FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

| Qualified Dividends | $0 | $0 | $6,189 |
| --- | --- | --- | --- |
| PFIC Income | $1,198 | $1,005 | $35,742 |
| Total Tax | $10,218 | $10,422 | $118,017 |

11. Juan and Catherine Reyes US tax returns has been prepared by Sidney Yoskowitz, CPA for over 40 years. They would mail their information reporting such as 1099 statements, checks, income, to him. Sidney Yoskowitz would electronically file the returns when completed. Juan and Catherine Reyes did not seek out any advice from their accountant.

12. Per letter received from Mr. Yoskowitz dated 2/6/2018, he sent a yearly organizer to all his clients. Juan and Catherine Reyes never filled out the yearly organizer. Mr. Yoskowitz always asked his clients about foreign bank accounts and foreign income. He wrote, "The Reyes' told me the 1099's they sent me were all their other income." Mr. Yoskowitz found out Juan and Catherine Reyes had foreign income in 2014 when their attorney asked him to prepare amended returns for years 2005 – 2012.

13. Juan and Catherine Reyes did not tell their return preparer about the foreign bank account. Juan and Catherine Reyes believed the foreign bank account was a separate entity and had nothing to do with U.S., so they didn't tell their return preparer. The foreign bank account had nothing to do with U.S., therefore believed there was no reporting requirement with the account.

14. Juan and Catherine Reyes received a letter from the bank notifying of the bank's forthcoming closure and request for transfer instructions. It was then decided to transfer the money to the United States. Juan and Catherine Reyes sought a lawyer for assistance to bring the funds to the United States. Taxpayers were aware that taxes had to be paid if funds were brought to the United States. Their lawyer advised them of the OVDI program and advised them of filing FBARs and reporting the income on their U.S. Tax Returns.

15. Schedule B was filed with the 2005 – 2012 original tax returns and the question 7a interest in a financial account in a foreign country was marked "No" for all years 2005 - 2012.

16. As appropriate with the requirement of cooperation in the Offshore Voluntary Disclosure Program, the taxpayer has signed on March 31, 2017 a Consent to extend the time

| Penalty_FBAR_Lead_Sheet_ Rev. 03/2012 | Workpaper # | -1.4 |
| --- | --- | --- |

| **Taxpayer Name:** | Juan Reyes | **Examiner:** | Kimberly Nguyen |
|---|---|---|---|
| **TIN:** | ███████0937 | | |
| **Tax Form:** | TD F90-22.1/FinCen 114 | **Date:** | 1/2/2018, 2/7/2018, 5/10/2018 |
| **Tax Year (s):** | 201012, 201112, 201212, | | |

### FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

to assess civil penalties provided by 31 U.S.C. §5321 for FBAR violations, to include the calendar year 2005 through 2011 for a financial account that was maintained with a financial institution located in a foreign country, on or before December 31, 2018.

**Law:** *(Tax Law, Regulations, court cases, and other authorities. If Unagreed, include Argument.)*
31 U.S.C. §§ 5314; 5321(a)(5)(A) & (B); 5321(a)(5)(C) & (D); 5321(a)(6); 5321(b)(1)

**Argument:**
Federal law requires taxpayers to report annually to the Internal Revenue Service any financial interests they have in any bank, securities, or other financial accounts in a foreign country. 31 U.S.C. §5314 (a). The report is made by filing a completed FinCen Form 114 (FBAR), formally TD F90-22.1, with the Department of the Treasury. The FBAR must be filed on or before June 30th of each calendar year with respect of foreign financial accounts maintained during the previous calendar year. 31 C.F.R. § 1010.306(c).

Based on the facts outlined above, the Government concludes willful blindness penalties apply for 2010 through 2012.

A U.S. person that has financial interest in, or signature authority over, foreign financial accounts in which the aggregate value exceeds $10,000 at any time during the calendar year is required to file an FBAR by June 30 the year following the calendar year being reported (31 CFR 1010.306). Juan Reyes is a US citizen residing in Forest Hills, NY. Juan Reyes had financial interest in foreign account located in Switzerland during 2010 through 2012. And the aggregate value of the accounts exceeded $10,000 in each of the years 2010 through 2012. Thus, Juan Reyes had FBAR filing requirements in 2010 through 2012. Juan Reyes filed delinquent FBARs on 8/03/2014 for 2010 through 2012. The maximum willful FBAR penalty that may be assessed is $3,139,701 for 2010 through 2012.

Per POA's letter,
*"There is no FBAR penalty if a taxpayer's failure to file was due to reasonable cause. The foreign account was established for a legitimate purpose. Dr. and Mrs. Reyes' parents had no U.S. connection, were Nicaraguan citizens and residents and were worried about Nicaraguan political stability. Dr. and Mrs. Reyes' background suggest that there was not a reasonable expectation for them to know of the FBAR requirements. When Dr. and Mrs. Reyes became aware of reporting responsibilities, they brought the account into the U.S. in 2013 and applied to enter the 2012 OVDI. Based on the facts and circumstances, Dr. and Mrs. Reyes should not be subject to any FBAR*

| Penalty_FBAR_Lead_Sheet_ Rev. 03/2012 | Workpaper # | -1.5 |
|---|---|---|

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Juan Reyes | **Examiner:** | Kimberly Nguyen |
| **TIN:** | ▮▮▮▮▮0937 | | |
| **Tax Form:** | TD F90-22.1/FinCen 114 | **Date:** | 1/2/2018, 2/7/2018, 5/10/2018 |
| **Tax Year (s):** | 201012, 201112, 201212, | | |

## FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

*penalties and their failure to file was due to reasonable cause.*

*The primary reason for establishing and maintaining a foreign account was unrelated to tax avoidance. The account was created by Dr. Reyes' parents in Nicaragua during a time of turmoil and risk in that country. In this case, the IRS will not be able to prove willful noncompliance. Dr. and Mrs. Reyes had reasonable cause for their failure to timely file FBARs. They should not be subject to an FBAR penalty, or if so, it should not exceed $10,000 per violation, particularly since they voluntarily corrected the problem before being contacted by the IRS. In any event, given their circumstances, on FBAR penalty calculation of 27.5% on the highest balance of the account in 2010 is needlessly punitive. An FBAR penalty, if due, should be determined at a rate reflecting the facts and circumstances. Funds were not sent from the U.S. to an overseas account in an attempt to avoid U.S. tax or reporting requirements."*

Title 31 does not provide specific examples of reasonable cause exceptions as they relate to FBAR penalties (31 CFR 5321(a)(5)(B)(ii)). However, IRC Regulation 1.6664-4 provides general guidance on how to determine if a taxpayer has reasonable cause. Reasonable cause is determined by considering all the facts and circumstances. The main question to be answered is whether the taxpayer acted in good faith considering his or her experience, knowledge, and education.

Given the facts and circumstances, Juan Reyes did not act in good faith in regards to his FBAR filing obligations as follows:

- **Juan Reyes failed to include income from his offshore account and asset on his 2005 through 2012 income tax returns.** During the years 2005 through 2012, Juan Reyes failed to include $604,491 of interest income and $6,189 of dividend income. Juan Reyes knew to report his domestic interest and dividend income, but failed to include his foreign interest and dividend income on his Schedule B.

- **Juan Reyes failed to inform his tax preparer that he had ownership in a foreign bank account or seek advice about any reporting requirements.** Juan Reyes failed to inform his tax preparer that he has ownership in a Swiss bank account. He did not seek out any advice about having ownership in a Swiss bank account. He did not inquire or ask his accountant if the income from Switzerland should be included on his US tax returns. Juan Reyes was very active in the Lloyds TSB Bank account. He made several payments, monthly or on a weekly basis, via credit cards issued to him. He made several credit cards payments on a monthly basis or transfers were made to pay various living expenses.

- **Juan Reyes had significant amount of his financial assets at a Swiss branch of Lloyds TSB Bank.** Juan Reyes moved the money to the Swiss branch of Lloyds TSB Bank. Per Juan

| | | |
|---|---|---|
| Penalty_FBAR_Lead_Sheet_ Rev. 03/2012 | Workpaper # | -1.6 |

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Juan Reyes | **Examiner:** | Kimberly Nguyen |
| **TIN:** | ▆▆▆▆0937 | | |
| **Tax Form:** | TD F90-22.1/FinCen 114 | **Date:** | 1/2/2018, 2/7/2018, 5/10/2018 |
| **Tax Year (s):** | 201012, 201112, 201212, | | |

## FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

Reyes, it was done at the recommendation of the English banker. No plausible explanation was provided to what benefit he received by moving the funds to Switzerland rather than keeping it in England. The English banker lost a client with a considerable amount of wealth. The account was moved from a high tax jurisdiction to a low tax jurisdiction.

- **Juan Reyes has no personal or business connection to Switzerland to continue to have a bank account there.** Juan or Catherine Reyes never traveled to Switzerland. Juan or Catherine have no family ties in Switzerland.

- **Juan Reyes established a credit card linked to the foreign bank account to pay for everyday living expenses he incurred in the United States.** Juan Reyes needed the money to live on and instead of bringing the funds back to the United States, where he could more easily access and manage the funds, he moved it to Switzerland and asked for credit cards to access the funds. Credit cards were often recommended by bankers as a way to "safely" use the money in the foreign bank account without the funds being detected by the U.S. authorities.

- **Juan Reyes is highly educated and has been in the United States for more than 40 years.** Juan Reyes is very assimilated to U.S. rules and regulations considering his medical practice. He took the diligence to make sure he was complaint with DEA rules among others and likely sought legal advice but with his largest financial asset, he sought no advice on his responsibilities to report the income.

- **Juan Reyes failed to properly complete Schedule B.** Juan Reyes filed Schedule B for tax years 2005 - 2012. The Schedule B Part III line 7a question about having an interest in a financial account in a foreign country was checked "No". Here is a snapshot of his 2012 Sch B, which points to the filing requirements for TD F90-22.1 or FinCEN Form 114:

| | | Yes | No |
|---|---|---|---|
| | You must complete this part if you (a) had over $1,500 of taxable interest or ordinary dividends; (b) had a foreign account; or (c) received a distribution from, or were a grantor of, or a transferor to, a foreign trust. | | |
| Part III Foreign Accounts and Trusts (See instructions.) | 7a At any time during 2012, did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country? See instructions. | | X |
| | If 'Yes,' are you required to file Form TD F 90-22.1 to report that financial interest or signature authority? See Form TD F 90-22.1 and its instructions for filing requirements and exceptions to those requirements | | |
| | b If you are required to file Form TD F 90-22.1, enter the name of the foreign country where the financial account is located ► | | |
| | 8 During 2012, did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust? If 'Yes,' you may have to file Form 3520. See instructions | | X |

BAA  For Paperwork Reduction Act Notice, see your tax return instructions.   FDIA0101L 07/26/12   Schedule B (Form 1040A or 1040) 2012

- **Juan Reyes used an accountant to file 2005-2012 US Income Tax Returns.** Juan Reyes signed the 2005 – 2012 federal tax returns, thereby declaring under penalty of perjury that he had "examined these returns and accompanying schedules and statements" and

| | | |
|---|---|---|
| Penalty_FBAR_Lead_Sheet_ Rev. 03/2012 | Workpaper # | -1.7 |

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Juan Reyes | **Examiner:** | Kimberly Nguyen |
| **TIN:** | ▉▉▉▉▉0937 | | |
| **Tax Form:** | TD F90-22.1/FinCen 114 | **Date:** | 1/2/2018, 2/7/2018, 5/10/2018 |
| **Tax Year (s):** | 201012, 201112, 201212, | | |

## FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

that to the best of his knowledge, the returns were "true, accurate, and complete." "A taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents." Greer v. Commissioner of Internal Revenue, 595 F.3d 338, 347 n. 4 (6th Cir. 2010); United States v. Doherty, 233 F.3d 1275, 1282 n.10 (11th Cir. 2000) (same). Juan Reyes' signature is prima facie evidence that he knew the contents of the return, United States v. Mohney, 949 F.2d 1397, 1407 (6th Cir. 1991), and at a minimum, Schedule B, line 7a's directions to "[s]ee instructions for exceptions and filing requirements for FinCEN Form 114" put Juan Reyes' on notice of the FBAR filing requirement.

It is the Government's position that Juan Reyes's failure to file FBARs was willful blindness. Juan Reyes had significant portion of his assets transferred to a bank in Switzerland, yet he never asked his preparer or sent his foreign bank statements to his preparer to determine whether the foreign income was taxable or whether he had any reporting requirements associated with the account. Considering that the investment he held in the foreign account made up a significant amount of his asset, it is unreasonable to believe that he would not seek advice. Based on this, it can be inferred that Juan Reyes was intentionally unaware of his filing and reporting requirements related to his foreign account and foreign income. This concept of willful blindness is described in IRM 4.26.16.6.5.1(5) which provides that "willfulness may be attributed to a person who has made a conscious effort to avoid learning about the FBAR reporting and recordkeeping requirements." Not only did Juan Reyes fail to seek advice from his preparer, but also affirmatively failed to answer questions about foreign account ownership and activity posed on his preparer's yearly tax organizer. Additionally, the tax returns he signed for 2005 through 2012 included Schedule B which provided instructions on where to find information about FBAR filing requirements; Juan Reyes did not follow these instructions. IRM 4.26.16.6.5.1(5) states "These resources indicate that the person could have learned of the filing and recordkeeping requirements quite easily. It is reasonable to assume that a person who has foreign bank accounts should read the information specified by the government in tax forms. The failure to follow-up on this knowledge and learn of the further reporting requirement as suggested on Schedule B may provide some evidence of willful blindness on the part of the person." Juan Reyes had plenty of opportunity to learn about his additional filing requirements but he did not do so; any claims that he had no knowledge of these requirements are unreasonable. Furthermore, based on the available facts, it is the Government's opinion that Juan Reyes made a conscious, intentional decision not to learn about his FBAR filing requirements or to mention the foreign accounts and income to his preparer. IRM 4.26.16.6.5.2(1) provides that willfulness is "usually established by drawing a reasonable inference from the available facts." Because willfulness is a state of mind, it "can rarely be proven by direct evidence" which is why "the government may base a determination of willfulness in the failure to file the FBAR on inference from conduct meant to conceal sources of income or other financial information."

| | | |
|---|---|---|
| Penalty_FBAR_Lead_Sheet_<br>Rev. 03/2012 | Workpaper # | -1.8 |

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Juan Reyes | **Examiner:** | Kimberly Nguyen |
| **TIN:** | ▮▮▮▮▮0937 | | |
| **Tax Form:** | TD F90-22.1/FinCen 114 | **Date:** | 1/2/2018, 2/7/2018, 5/10/2018 |
| **Tax Year (s):** | 201012, 201112, 201212, | | |

## FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

The statutory maximum willful blindness FBAR penalty under 31 U.S.C. §5321(a)(5)(C) is the greater of $100,000 or 50% of the balance in the account at the date of the violation (the FBAR filing deadline). The total willful blindness FBAR penalty for 2010-2012 per the method outlined in the IRM is $3,139,701. However, the Government believes that the penalty per the IRM is too severe. Taxpayer qualifies for mitigation, a more appropriate willful FBAR penalty for tax years 2010 through 2012 are; 2010 - $172,022; 2011 - $172,022; and 2012 - $172,021, for Total $516,065.

Specific citations:

**31 CFR § 1010.350 - Reports of foreign financial accounts:**
(Revision 2/24/2011, Effective 3/28/2011 & **Formerly** *31 C.F.R. § 103.24-See below*)

   (a) In general. Each United States person having a financial interest in, **or signature or other authority over (emphasis added)**, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists and shall provide such information as shall be specified in a reporting form prescribed under 31 U.S.C. 5314 to be filed by such persons. The form prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1), or any successor form. See paragraphs (g)(1) and (g)(2) of this section for a special rule for persons with a financial interest in 25 or more accounts, or signature or other authority over 25 or more accounts.

   (b) United States person. For purposes of this section, the term "United States person" means--

      (1) A citizen of the United States;

      (2) A resident of the United States. A resident of the United States is an individual who is a resident alien under 26 U.S.C. 7701(b) and the regulations thereunder but using the definition of "United States" provided in 31 CFR 1010.100(hhh) rather than the definition of "United States" in 26 CFR 301.7701(b)-1(c)(2)(ii); and

      (3) An entity, including but not limited to, a corporation, partnership, trust, or limited liability company created, organized, or formed under the laws of the United States, any State, the District of Columbia, the Territories and Insular Possessions of the United States, or the Indian Tribes.

   (c) Types of reportable accounts. For purposes of this section--

      (1) Bank account. The term "bank account" means a savings deposit, demand deposit, checking, or any other account maintained with a person engaged in the business of banking.

      (2) Securities account. The term "securities account" means an account with a person engaged in the business of buying, selling, holding or trading stock or other securities.

| | | |
|---|---|---|
| **Penalty_FBAR_Lead_Sheet_** Rev. 03/2012 | Workpaper # | -1.9 |

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Juan Reyes | **Examiner:** | Kimberly Nguyen |
| **TIN:** | ███ 0937 | | |
| **Tax Form:** | TD F90-22.1/FinCen 114 | **Date:** | 1/2/2018, 2/7/2018, 5/10/2018 |
| **Tax Year (s):** | 201012, 201112, 201212, | | |

## FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

(3) Other financial account. The term "other financial account" means--

(i) An account with a person that is in the business of accepting deposits as a financial agency;

(ii) An account that is an insurance or annuity policy with a cash value;

(iii) An account with a person that acts as a broker or dealer for futures or options transactions in any commodity on or subject to the rules of a commodity exchange or association; or

(iv) An account with--

(A) Mutual fund or similar pooled fund. A mutual fund or similar pooled fund which issues shares available to the general public that have a regular net asset value determination and regular redemptions; or

(B) Other investment fund. [Reserved]

(4) Exceptions for certain accounts.

(i) An account of a department or agency of the United States, an Indian Tribe, or any State or any political subdivision of a State, or a wholly-owned entity, agency or instrumentality of any of the foregoing is not required to be reported. In addition, reporting is not required with respect to an account of an entity established under the laws of the United States, of an Indian Tribe, of any State, or of any political subdivision of any State, or under an intergovernmental compact between two or more States or Indian Tribes, that exercises governmental authority on behalf of the United States, an Indian Tribe, or any such State or political subdivision. For this purpose, an entity generally exercises governmental authority on behalf of the United States, an Indian Tribe, a State, or a political subdivision only if its authorities include one or more of the powers to tax, to exercise the power of eminent domain, or to exercise police powers with respect to matters within its jurisdiction.

(ii) An account of an international financial institution of which the United States government is a member is not required to be reported.

(iii) An account in an institution known as a "United States military banking facility" (or "United States military finance facility") operated by a United States financial institution designated by the United States Government to serve United States government installations abroad is not required to be reported even though the United States military banking facility is located in a foreign country.

(iv) Correspondent or nostro accounts that are maintained by banks and used solely for bank-to-bank settlements are not required to be reported.

**31 C.F.R. § 103.24** – Requires FBAR filing and recordkeeping, as follows:

[Generally effective through 3/28/2011 unless elect to follow **31 CFR § 1010.350- See above**]

(a) Each person subject to the jurisdiction of the United States (except a foreign subsidiary of a U.S. person) having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country shall report such relationship to the Commissioner of the Internal Revenue for each year in which such relationship exists, and shall provide such information as shall be specified in a reporting form prescribed by the Secretary to be filed by such persons. Persons having a financial interest in 25 or more foreign financial accounts need only note that fact on the form. Such persons will be required to provide detailed information concerning each account when so requested by the Secretary or his delegate.

| | | |
|---|---|---|
| Penalty_FBAR_Lead_Sheet_ Rev. 03/2012 | Workpaper # | -1.10 |

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Juan Reyes | **Examiner:** | Kimberly Nguyen |
| **TIN:** | ███████0937 | | |
| **Tax Form:** | TD F90-22.1/FinCen 114 | **Date:** | 1/2/2018, 2/7/2018, 5/10/2018 |
| **Tax Year (s):** | 201012, 201112, 201212, | | |

### FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet:

**Taxpayer Position:** *(If applicable)*

---

**Penalty_FBAR_Lead_Sheet_**
**Rev. 03/2012**

**Workpaper #** -1.11

**Willful Penalty Calculation**
**Taxpayer Name:** Juan Reyes

| | | Maximum Account Balance during the year ending 12/31/200X | Closing Balance on FBAR Filing Due Date (6/30/200X) | Ownership Percentage | Adjusted Maximum Account Balance subject to penalty | Adjusted Closing Account Balance on Due Date subject to penalty | Statutory 31 USC 5321(a)(5)(C) & (D) | Mitigated Penalties IRM 4.26.16.6.6 Level 1: The greater of A) $1,000/year or B) 5% of the MAB during the year/violation | Level 2: For each acct: the greater of A) $5,000 or B) 10% of the maximum balance in the account during the year | Level 3: For each acct: the greater of A) 10% of the maximum balance during the year or B) 50% of the balance as of the last day for filing the FBAR (6/30/xx) | Level 4: For each Level 4 acct: the greater of A) $100,000 or B) 50% of the balance in the account as of the last day for filing the FBAR (6/30/xx) | Total | Actual Penalty Proposed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2010 Statute: | | 12/31/2010 | 6/30/2011 | | | | | | | | | | |
| | Lloyds TSB Bank | 2,161,500 | 2,113,813 | 50% | 1,080,750 | 1,056,907 | 1,056,907 | - | - | - | 528,453 | | 172,022 |
| | | $ 2,161,500 | | | $ 1,080,750 | $ 1,056,907 | $ 1,056,907 | $ - | $ - | $ - | $ 528,453 | $ 528,453 | $ 172,022 |
| 2011 Statute: | | 12/31/2011 | 6/30/2012 | | | | | | | | | | |
| | Lloyds TSB Bank | 2,113,813 | 2,064,258 | 50% | 1,056,907 | 1,032,129 | 1,032,129 | - | - | - | 516,065 | | 172,022 |
| | | $ 2,113,813 | | | $ 1,056,907 | $ 1,032,129 | 1,032,129 | $ - | $ - | $ - | $ 516,065 | $ 516,065 | $ 172,022 |
| 2012 Statute: | | 12/31/2012 | 6/30/2013 | | | | | | | | | | |
| | Lloyds TSB Bank | 2,113,485 | 2,101,330 | 50% | 1,056,743 | 1,050,665 | 1,050,665 | - | - | - | 525,333 | | 172,021 |
| | | $ 2,113,485 | | | $ 1,056,743 | $ 1,050,665 | 1,050,665 | $ - | $ - | $ - | $ 525,333 | $ 525,333 | $ 172,021 |
| **Total Penalties for All Years** | | | | | | | $ 3,139,701 | | | | | $ 1,569,850 | $ 516,065 |

**ANALYSIS & CONCLUSION:**
[Using 50% of 6/30/2012 balance to spread evenly over 2010 - 2012.]

# Information on Making FBAR Penalty Payment by Check

*Required Disclosure to be Provided with Invoice or Remittance Instructions*
*Accounts Receivable Check Conversion*

**Authorization to convert your check:** If you send us a check to make your payment, your check will be converted into an electronic fund transfer. "Electronic fund transfer" is the term used to refer to the process in which we electronically instruct your financial institution to transfer funds from your account to our account, rather than processing your check. By sending your completed, signed check to us, you authorize us to copy your check and to use the account information from your check to make an electronic fund transfer from your account for the same amount as the check. If the electronic fund transfer cannot be processed for technical reasons, you authorize us to process the copy of your check.

**Insufficient funds:** The electronic fund transfer from your account will usually occur within 24 hours, which is faster than a check is normally processed. Therefore, make sure there are sufficient funds available in your checking account when you send us your check. If the electronic fund transfer cannot be completed because of insufficient funds, we may try to make the transfer up to two times [and we will charge you a one-time fee of $20.00 which we will also collect by electronic fund transfer].

**Transaction information:** The electronic fund transfer from your account will be on the account statement you receive from your financial institution. However, the transfer may be in a different place on your statement than the place where your checks normally appear. For example, it may appear under "other withdrawals" or "other transactions." You will not receive your original check back from your financial institution. For security reasons, we will destroy your original check, but we will keep a copy of the check for recordkeeping purposes.

**Your rights:** You should contact your financial institution immediately if you believe that the electronic fund transfer reported on your account statement was not properly authorized or is otherwise incorrect. Consumers have protections under a Federal law called the Electronic Fund Transfer Act for an unauthorized or incorrect electronic fund transfer.



Department of the Treasury
Internal Revenue Service
www.irs.gov

Notice 1330 (4-2004)
Catalog Number 38436W