UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────x

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.

JUAN REYES and
CATHERINE REYES,

    *Defendants.*
───────────────────────────────x

No. 1:21-cv-05578 (MB)

**Declaration of Catherine Reyes in Opposition to Plaintiff's Motion for Summary Judgment**

I, Catherine Reyes, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a defendant in this action, and I respectfully submit this declaration in opposition to the motion for summary judgment dated February 28, 2023 made by the United States of America.

2. I have personal knowledge of the facts stated herein.

3. The motion should be denied because I had no intention of defrauding the United States of America in not reporting the foreign bank account at issue on my joint income tax returns for the years 2010, 2011, and 2012.

4. The funds that were kept in the Lloyds Bank Account, which is the subject of this litigation, were originally housed in a Nicaraguan bank account with Banco de Londres y America del Sor which was opened by my husband's mother and father – citizens and residents of Nicaragua – in around 1972.

5. It was my mother- and father-in-law's wish that we use the money to move back to Nicaragua and build a home there.

1

6. Due to the volatile political climate in Nicaragua, however, my in-laws feared that the funds would be confiscated by the government of Nicaragua.

7. Rather than take this risk, my husband's parents decided to move the money out of the account in Nicaragua and place it in a new account under my husband's name, as he was no longer a resident of the country at that time. However, the money was not intended to be used until my husband and I moved back to Nicaragua once the political unrest had subsided.

8. The funds were originally transferred into an account with the London office of Banco de Londres. Banco de Londres then became part of Lloyds Bank in London. Then the funds were transferred into an account with Lloyds TSB Bank plc, Zurich and then finally moved to an account in Geneva, Switzerland, where they remained until 2014 when we sought to move the funds into an account in the United States.

9. While I am a United States citizen, the money was not intentionally kept out of the United States to deprive the U.S. of tax revenues; rather, the intention was to keep the funds from being confiscated by the government of Nicaragua, especially after the Communists seized power in around 1979.

10. This was money that belonged to my husband's parents.

11. The money was transferred out of Nicaragua prior to my husband's naturalization in the United States in 1982. We chose to leave the money in this foreign account to comport with my in-laws' wishes that it be saved until my husband and I could return to Nicaragua.

12. Unfortunately, the political climate in Nicaragua did not improve – rather, it worsened with the Communist takeover of the country – and so my husband and I have not moved to Nicaragua.

13. I am not trained in the law, much less tax law. I believed that moneys earned outside the United States did not need to be reported to the United States. I did not think there was a real issue with the foreign account, because the money in the foreign account at issue never had any connection to the United States – such moneys having been earned in Nicaragua by my husband's parents, and had only ever been housed in bank accounts outside of the United States. I truly believed that we were not required to report it to the United States on our joint income tax returns because the money in the account was earned outside the United States by my husband's parents. I do not recall our CPA ever asking whether we had foreign bank accounts with respect to the 2010 to 2012 tax filings, or prior thereto, and I did not pay attention to the lines on the tax returns (which were not even signed by me or my husband) that dealt with foreign accounts.

14. I came to learn that we would have been required to pay taxes on the funds in the Lloyds Bank account when we sought to transfer the funds to an account in the United States, which we attempted to do in 2014. My husband and I paid our taxes on the funds, and dispute that penalties are owed, because neither I nor my husband willfully failed to report the foreign account. It was merely inadvertent.

15. I did not review the FBAR reporting requirements at any time prior to filing my income tax returns for the years 2010-2012. If I had known that we were required to report the foreign bank account that happened to first be in my husband's name, and then in both our names, on our income tax returns, I would have done so, as I have never had any intention of violating United States law. Again, the failure to report was inadvertent, as I simply did not pay attention to the tax returns that were submitted by our accountant.

16. Once we embarked on the path of having the funds transferred to a bank account in the United States, and after being provided further legal advice, my husband and I disclosed the account to the Internal Revenue Service.

17. My intention never was to lie to the United States, hide our foreign bank account, or avoid paying the requisite taxes in the United States. I simply believed it was not required because the money had no connection whatsoever to the United States, having been earned by my husband's parents, and having been put in the name of my husband and me and transferred out of Nicaragua so that the government of Nicaragua would not seize the money.

I state the foregoing under penalty of perjury, pursuant to 28 U.S.C. § 1746.

Dated: Queens County, New York
April 11, 2023

*Catherine Reyes* (signature)
Catherine Reyes