UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
UNITED STATES OF AMERICA,                     :
:
    *Plaintiff,*                                :   No. 1:21-cv-05578
:
    *v.*                                        :   Dist. Judge Margo K. Brodie
:
JUAN REYES and                                :   Mag. Judge Peggy Kuo
CATHERINE REYES,                              :
:
    *Defendants.*                               :
---------------------------------------------------------------x

**PLAINTIFF UNITED STATES' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS JUAN REYES'S AND CATHERINE REYES'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

    The Plaintiff United States of America submits this memorandum of law in reply to Defendants Juan Reyes's and Catherine Reyes's opposition to the United States' motion for summary judgment ("Opposition").

    In their Opposition, Defendants concede that the only issue to be resolved at summary judgment is willfulness. As explained below, Defendants have not presented any dispute of material fact, and they misconstrue the standard for willfulness in an FBAR case as requiring "intentional" conduct when recklessness is sufficient. Either way, the Defendants are willful. Furthermore, the Court should reject their argument that an issue of fact exists by virtue of their original 2010-2012 federal income tax returns lacking handwritten signatures. Therefore, the Court should grant the United States' motion.

    **A.**    **The Court Should Reject Defendants' Argument that an Issue of Fact Exists Because the 2010-2012 Federal Income Tax Returns Used as Exhibits in Support of the United States' Motion Lack Handwritten Signatures.**

    Defendants contend that an issue of fact exists by virtue of a lack of handwritten signatures on Defendants' federal income tax returns for years 2010 through 2012 submitted in

1

support of the United States' Motion for Summary Judgment. Defendants claim that there is no proof that they ever signed their federal income tax returns for years 2010 through 2012, noting that copies of the returns used by the United States during its deposition of Defendants (*see* Glen Decl. to USA Motion, Exs. O, P, Q) do not contain handwritten signatures. It is unclear whether Defendants are referring to only those return copies (and thus suggesting that the return copies are not duplicates of legitimate, filed returns) or are instead making a broader statement that they never signed *any* return for years 2010-2012. Their declarations (¶ 13) state that they "did not pay attention to the lines on the return (which were not even signed by me or my [husband/wife]) that dealt with foreign accounts." Regardless, neither argument creates an issue of material fact.

The return copies at Exhibits O-Q are unsigned because the Defendants' returns were electronically filed with the IRS for years 2010-2012. The IRS examination file contains copies of the Form 1040 joint federal income tax returns for Defendants for years 2010, 2011, and 2012, as well as amended Form 1040X joint federal income tax returns for the same years. Declaration of Kimberly Nguyen ("Nguyen Decl."), ¶ 4. The IRS obtained the return copies (Exs. O, P. Q) from Defendants as part of the Offshore Voluntary Disclosure Program (OVDP), which requires taxpayers to submit copies of their filed federal income tax returns for the tax years covered by the voluntary disclosure. Nguyen Decl., ¶ 6. The return copies are unsigned and were used during the deposition of each Defendant. The Form 1040 joint federal income tax returns for the Defendants for tax years 2010, 2011, and 2012 were filed electronically. Nguyen Decl., ¶ 8. Electronically-filed returns do not contain a taxpayer's handwritten signature. This explains why the return copies submitted with the United States' motion (which are also part of the IRS examination file and produced to the Defendants in discovery) do not contain any handwritten

signatures and why the IRS does not have a paper version of the original Form 1040 federal income tax returns for Defendants for years 2011, 2011, and 2012 with handwritten signatures.

As further evidence that the unsigned return copies at Exhibits O-Q are duplicates or printed versions of the original returns that were electronically filed with the IRS, the amounts set forth in the "original amount" column in the Form 1040X match the amounts for the corresponding line items shown in the return copies at Exhibits O-Q. *See* Glen Decl., Exs. O-Q (original return copies), R-T (amended return copies).

Even if the Defendants' contention was that they never signed *any* return for years 2010-2012, that creates no issue of material fact because their returns were electronically filed with the IRS. Electronically-filed returns do not have handwritten signatures on them. Nguyen Decl. ¶ 8.

**B.      Defendants Misconstrue the Standard for Willfulness; Recklessness Is Sufficient.**

Defendants incorrectly argue that "willfulness" is a function of intentional conduct. Specifically, Defendants argue that:

> Congress added the word 'willful' to 31 U.S.C. § 5321 in order to hold accountable only those who committed truly intentional acts. Including 'willful' in the statute reflects Congress's intent that the penalty be reserved for intentional conduct, or else it need not have included the term in the first place.

Opposition, at p. 7. Defendants further argue that "willfulness as used in the statute – and as alleged herein – must mean voluntary, conscious, intentional conduct." This is not so, because proof of reckless conduct alone is sufficient to satisfy the element of willfulness. *United States v. Garrity*, 394 F. Supp. 3d 267, 273-74 (D. Conn. 2018); *United States v. Schik*, 2022 WL 685415, at *5 (S.D.N.Y. Mar. 8, 2022); *United States v. Gentges*, 531 F. Supp. 3d 731, 743 (S.D.N.Y. 2021); *United States v. Bernstein*, 486 F. Supp. 3d 639, 646-48 (E.D.N.Y. 2020). Courts rely on various indicia of recklessness to determine willfulness, including (1) submitting a

federal tax return which falsely states that taxpayer had no foreign financial accounts during that tax year, (2) failure to make a simple inquiry to taxpayer's accountant regarding the foreign financial account, including any tax consequences therefrom, (3) understanding that interest income from a domestic bank is taxable under U.S. law, (4) instructing the foreign bank where the foreign account was held to hold mail related to the account, and/or to not invest in U.S. securities, and (5) significance of foreign account to account holder's net worth.  *See* Motion, at pp. 16-17 (citing cases for each indicia of recklessness).

The above indicia of recklessness to determine willfulness are well established in FBAR case law throughout the country.  Defendants ignore these indicia and the weight of case law authority, and incorrectly argue that the United States must prove a higher standard.  Establishing a willful FBAR violation does not always involve proving intentional conduct, fraud, or a desire to "cheat the United States," as Defendants contend.  Opposition, at p. 8.  Recklessness is sufficient, and having met the above-referenced indicia, Defendants' conduct was certainly at least reckless.

In addition, Defendants fail to recognize that simply being unaware of the reporting requirement is not a means of escaping willfulness.  Opposition, at pp. 2 ("Indeed, the Reyeses would have reported their foreign bank account if they had known that they were required to do so…."), 7 ("[T]he Reyeses were unaware of the requirement to report their foreign bank account as they did not review any FBAR instructions before filing.").  Under the recklessness standard, it can be "inferred" that a person willfully failed to file an FBAR by showing that he undertook "a conscious effort to avoid learning about reporting requirements."  *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012).  In other words, under the recklessness standard it is not enough for Defendants to simply say that they were unaware of the reporting requirement.

4

Instead, Defendants undertook a conscious effort to avoid learning about the reporting requirements, as the evidence amassed to date shows: (1) failure to make a simple inquiry to their longtime accountant about the Lloyds Bank account, or even informing him of its existence, (2) understanding that interest income from domestic banks must be reported on federal income tax returns, (3) giving hold mail instructions to Lloyds Bank, (4) giving instructions to Lloyds Bank to divest U.S. securities, (5) they have the level of education evidencing a sophisticated taxpayer, (6) their part-time ownership in real-estate ventures, (7) surrounding themselves with professionals who were in positions to either advise them about the implications of the foreign account (or at the very least point them in the right direction) yet failing to seek their advice, and (8) holding the vast majority of their wealth (75-90%) in the Lloyds Bank account during the years at issue.

### C. Defendants Have Not Presented Any Dispute of Material Fact.

Defendants largely admit the facts presented in the United States' statement of material facts accompanying its summary judgment motion. The few facts that were not unqualifiedly admitted do not present a dispute of material fact.

With respect to Plaintiff's Statement of Undisputed Material Fact ("SUF") ¶ 14 regarding hold mail instructions, Defendants point to their deposition testimony that they do not recall ever having requested that Lloyds Bank keep mail related to their account. However, Defendants' present lack of recollection does not mean that they never made a keep mail request. There is no dispute that Defendants signed a written hold mail request, which document was produced by Lloyds Bank to Defendants (and then to the United States) in discovery in this case and is admissible through the business records declaration signed by Lloyds Bank's records custodian.

SUF ¶ 17 regarding instructions to divest U.S. securities presents a similar situation. Defendants point to their deposition testimony that they do not recall instructing anyone at Lloyds Bank to divest U.S. securities. But again, Defendants' present lack of recollection does not mean that they never made a U.S. securities divestment request. There is no dispute that Mrs. Reyes signed a written form requesting divestment of U.S. securities, which document was produced by Lloyds Bank in discovery in this case.

SUF ¶ 21 states that "[t]he Reyeses shielded the use of the Lloyds Account to pay for their living expenses in the United States in various ways. For example, Mrs. Reyes requested to pick up one credit card, a Maestro Card linked to the Lloyds Account, at a bank location in Madrid, Spain, rather than having it mailed to her home in New York." Defendants refer to Mrs. Reyes's deposition testimony that they travelled to Madrid to visit friends and not to hide the fact that they had a foreign bank account. Nevertheless, Defendants do not appear to dispute that Mrs. Reyes chose to pick up in Madrid, Spain, a credit card linked to the Lloyds Account, rather than having it mailed to her home in New York.

SUF ¶ 22 states that "Mrs. Reyes directed her Eurocard statements be sent to a family friend's address in Madrid, rather than her home address in the United States." Defendants refer to Mrs. Reyes's deposition testimony that she did not recall having a Eurocard or requesting the statements from such a card be sent to their friends in Madrid. However, Dr. Reyes did recall having a Eurocard linked to the Lloyds Account but "could only speculate" that the reason for requesting that statements be sent to Madrid was because Defendants were going to go there. Glen Decl., Ex. C (Juan Reyes Dep. Tr.), at 89:9-91:9.

SUF ¶ 28 states that "[a]fter Mr. Yoskowitz prepared the Reyeses' 2010-2012 income tax returns, Dr. Reyes reviewed the returns for accuracy, and signed and returned them to Mr.

6

Yoskowitz for filing with the IRS." Defendants refer to Dr. Reyes's deposition testimony that, in response to the question of "So did you and your wife review and confirm the accuracy of the original 2010 return prior to signing it," Dr. Reyes answered "Probably." According to Defendants, "probably" is merely an inference and not a definitive answer. However, it is not a denial, either. Defendants also state that they never signed the original 2010-2012 tax returns, which as discussed above does not create a dispute of fact because they electronically filed their original returns for those years, and electronically-filed returns do not contain handwritten signatures.

SUF ¶ 29 states that "[a]ccording to Mrs. Reyes, she did not review the Reyeses' 2010-2012 joint federal income tax returns after they were prepared by Mr. [Sidney] Yoskowitz for accuracy prior to signing" and that "Mrs. Reyes testified, 'if Sidney sent it to me, I signed it.'" Defendants state that Mrs. Reyes did not sign the original 2010-2012 tax returns, which as discussed above does not create a dispute of fact because Defendants electronically filed their original returns for those years, and electronically-filed returns do not contain handwritten signatures.

SUF ¶ 32 states that "[o]n the Schedule B of their originally-filed joint federal income tax returns for 2010-2012, Dr. Reyes and Mrs. Reyes checked 'no' in response to the question on Schedule B of whether they had an interest in or a signature or other authority over a financial account…in a foreign country." Defendants again state that they did not sign the original 2010-2012 tax returns, which as discussed above does not create a dispute of fact because Defendants electronically filed their original returns for those years, and electronically-filed returns do not contain handwritten signatures. Defendants further state that their accountant, who prepared their returns, checked the box "no" regarding whether they had a foreign financial account, and

7

that Defendants did not review the tax returns prior to filing.  This does not create a dispute of material fact because (1) regardless of who checked the box "no" on Schedule B, there is no dispute that the box was checked on their federal income tax returns, (2) it may be true that Mrs. Reyes did not review the 2010-2012 returns before those returns were electronically filed and signed, (3) there is no direct contradiction between Dr. Reyes's testimony that he "probably" reviewed the 2010-2012 returns before they were electronically signed and filed (which Defendants characterize as merely an inference and not a definitive answer) and Defendants' current position that he did not review the returns.

Under the Internal Revenue Code, "[t]he Secretary shall develop procedures for the acceptance of signatures in digital or other electronic form.  Until such time as such procedures are in place, the Secretary may…(A) waive the requirement of a signature for; or (B) provide for alternative methods of signing or subscribing, a particular type or class of return, declaration statement, or other document required or permitted to be made or written under internal revenue laws and regulations." 26 U.S.C. § 6061(b).  "The IRS treats a PIN [Personal Identification Number] as an electronic signature." *United States v. Lawrence*, 557 F. App'x 520, 530 (6th Cir. 2014) (citing 26 U.S.C. § 6061(b) and IRS Pub. 1345 ("defining an 'Electronic Signature' as a '[m]ethod of signing a return electronically through use of a Personal Identification Number (PIN)'"). IRS Form 8879 (IRS e-file Signature Authorization) is used to authorize the electronic filing of returns.  *See* https://www.irs.gov/pub/irs-pdf/f8879.pdf.  The Form 8879 is signed by the taxpayer but is not filed with the IRS; instead, it is kept by the "electronic return originator" (ERO). *Id.* On the Form 8879, the taxpayer "consent[s] to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send my return to the IRS" and

8

"acknowledge[s] that the personal identification number (PIN) below is my signature for the income tax return (original or amended) I am now authorizing." *Id.*

Here, no Form 8879 was produced in discovery by either the Defendants or Mr. Yoskowitz's former firm. However, the Defendants' Forms 1040 for 2010, 2011, and 2012 contain a five-digit PIN on the second page of the return. Courts have rejected taxpayers' argument that a lack of handwritten signature on a return combined with a lack of Form 8879 shows no evidence of signing the return. *See United States v. Frye*, 770 F. App'x 137, 139 (4th Cir. 2019) ("[A] rational juror could conclude that the presence of [taxpayer]'s PIN, a unique identifier, on her return was sufficient to show that [taxpayer] signed her return."); *Lawrence*, 557 F. App'x at 530 (denying motion for acquittal because "although [taxpayer] contends that his returns for those years are unsigned, the IRS accepted both returns as properly filed and apparently never questioned whether these returns were unsigned" and "a rational jury could treat the undisputed presence of [taxpayer]'s PIN—a unique personal identifier, similar to a handwritten signature—on the e-filed returns for 2005 and 2006 as proof beyond a reasonable doubt that he 'subscribed' to these returns"); *United States v. Burdett*, 202 WL 16923732, at *5 (E.D. La. Nov. 14, 2022) ("The Court is persuaded that the presence of [taxpayer]'s PIN on the 2014 return, in combination with [tax preparer]'s testimony that he prepared [taxpayer]'s returns for tax years 2014 through 2017 and the government's documentary evidence that she provided him with relevant financial information for 2014, provides sufficient evidence from which to conclude that [taxpayer] signed the 2014 tax return."). Here, it is undisputed that the 2010-2012 returns were electronically signed and filed, that the returns contain a PIN on p. 2, that Mr. Yoskowitz prepared Defendants' returns for those years, and that Defendants gave Yoskowitz the information he needed to prepare their returns.

SUF ¶ 36 is disputed "to the extent that Dr. Reyes did not sign these tax returns." Again, as discussed above does not create a dispute of fact because Defendants electronically filed their original returns for years 2010-2012, and electronically-filed returns do not contain handwritten signatures.

In sum, the few facts that were not unqualifiedly admitted by Defendants do not present a dispute of material fact.

## CONCLUSION

For all of the reasons set forth above, the Court should grant the United States' motion for summary judgment.

Dated: May 2, 2023

                              DAVID A. HUBBERT
                              Deputy Assistant Attorney General
                              U.S. Department of Justice, Tax Division

                              */s/ Philip L. Bednar*
                              PHILIP L. BEDNAR (WA State No. 41304)
                              JULIA M. GLEN (MN Bar No. 0399238)
                              Trial Attorneys, Tax Division
                              U.S. Department of Justice
                              P.O. Box 55
                              Washington, D.C.  20044
                              202-307-6415 (v) (plb)
                              202-598-3280 (v) (jmg)
                              202-514-5238 (f)
                              Philip.L.Bednar@usdoj.gov
                              Julia.M.Glen@usdoj.gov

Of Counsel:

BREON PEACE
United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF participants.

*/s/ Philip L. Bednar*

PHILIP L. BEDNAR
Trial Attorney
Civil Trial Section, Northern Region