UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────── x
UNITED STATES OF AMERICA,

            *Plaintiff,*            No. 1:21-cv-05578 (MB)

    *v.*                         **Declaration of Juan Reyes**
                                           **in Opposition to Plaintiff's**
JUAN REYES and                       **Motion for Summary Judgment**
CATHERINE REYES,

            *Defendants.*
───────────────────────────── x

I, Juan Reyes, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am a defendant in this action, and I respectfully submit this declaration in opposition to the motion for summary judgment dated February 28, 2023 made by the United States of America.

2.     I have personal knowledge of the facts stated herein.

3.     The plaintiff's motion for summary judgment should be denied because I had no intention of defrauding the United States of America in not reporting my foreign bank account on my and my wife Catherine Reyes' joint income tax returns for the years 2010, 2011, and 2012.

4.     The funds that were kept in the Lloyds Bank account, which is the subject of this litigation, were originally housed in a Nicaraguan bank account with Banco de Londres y America del Sor which was opened by my mother and father – citizens and residents of Nicaragua – in around 1972.

5.     It was my parents' wish that my wife and I use the money to move back to Nicaragua and build a home there.

6. Due to the volatile political climate in Nicaragua, however, my parents feared that the funds would be confiscated by the government.

7. Rather than take this risk, my parents decided to move the money out of the account in Nicaragua and place it in a new account under my name, as I was no longer a resident of the country at that time. However, the money was not intended to be used until I moved back to Nicaragua with my wife once the political unrest had subsided.

8. The funds were transferred into an account with the London office of Banco de Londres. Banco de Londres then became part of Lloyds Bank in London. Then the funds were transferred into an account with Lloyds TSB Bank plc, Zurich and then finally moved to an account in Geneva, Switzerland, where they remained until 2014 when I sought to move the funds into an account in the United States. By this time, my wife was also named on the account.

9. While I have been a United States citizen since 1982, the money was not intentionally kept out of the United States. Rather, it was intentionally kept out of Nicaragua.

10. This was money that belonged to my parents and was moved to foreign countries to avoid confiscation by the Nicaraguan government.

11. The money was transferred out of Nicaragua prior to my naturalization in the United States. We chose to leave the money in this foreign account to comport with my parents' wishes that the moneys be saved until I could return to Nicaragua with my wife.

12. Unfortunately, the political climate in Nicaragua did not improve – rather, it worsened with the Communist takeover of the country in about 1979 – and so I have not moved back to Nicaragua with my wife.

13.     I am not trained in the law, much less tax law. I had had informal conversations with an international lawyer and had read information in a Spanish-language source advising that moneys earned outside the United States did not need to be reported to the United States. I did not think there was a real issue with the foreign account, because the money in the foreign account at issue never had any connection to the United States – such moneys having been earned in Nicaragua by my parents, and had only ever been housed in bank accounts outside of the United States. I truly believed that I was not required to report it to the United States on my and my wife's joint income tax returns because the money in the account was earned outside the United States by my parents. I do not recall my CPA ever asking whether my wife and I had foreign bank accounts with respect to the 2010 to 2012 tax filings, or prior thereto, and I did not pay attention to the lines on the tax returns (which were not even signed by me or my wife) that dealt with foreign accounts.

14.     I came to learn that I would have been required to pay taxes on the funds in the Lloyds Bank account when I transferred the funds to an account in the United States, which I attempted to do in 2014. My wife and I paid our taxes on the funds, and dispute that penalties are owed, because neither I nor my wife willfully failed to report the foreign account. It was merely inadvertent.

15.     I did not review the FBAR reporting requirements at any time prior to filing my income tax returns for the years 2010-2012.

16.     If I had known that I was required to report the foreign bank account that happened to be in my name on my income tax returns, I would have, as I have never had any intention of violating United States law. Again, the failure to report was inadvertent, as I simply did not pay attention to the tax returns that were submitted by our accountant.

17. Once we embarked on the path of having the funds transferred to a bank account in the United States, and after being provided further legal advice, my wife and I disclosed the account to the Internal Revenue Service.

18. My intention never was to lie to the United States, hide our foreign bank account, or avoid paying the requisite taxes in the United States. I never even thought it was required because the money had no connection to the United States, having been earned by my parents, and having been put in the name of my wife and me and transferred out of Nicaragua so that the government of Nicaragua would not seize the money.

I state the foregoing under penalty of perjury, pursuant to 28 U.S.C. § 1746.

Dated: Queens County, New York
April 11, 2023

_____
Juan Reyes