# MAZZOLA LINDSTROM LLP

RICHARD E. LERNER
PARTNER
Richard@mazzolalindstrom.com
O: 646-813-4345
C: 917-584-4864

May 3, 2024

**Via ECF**

Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

**Re: United States v. Reyes, 21-cv-05578 (MKB)**

Dear Chief Judge Brodie:

  As mentioned during today's conference, the Reyes defendants' letter of February 22, 2024 (ECF 31) was supposed to have two attachments which I inadvertently neglected to upload onto the court's docket. Accordingly, I am submitting them herewith.

  Thank you.

                  Respectfully submitted,

                  MAZZOLA LINDSTROM LLP

                  Richard E. Lerner

**Enc.:** Letters dated 8/1/19 and 8/21/19

**Service via ECF**

# SEYFARTH SHAW

Seyfarth Shaw LLP

620 Eighth Avenue

New York, New York 10018

(212) 218-5500

fax (212) 218-5526

www.seyfarth.com

Writer's direct phone
(212) 218-5549

Writer's e-mail
dallen@seyfarth.com

August 1, 2019

Ms. Krista Groen
Appeals Officer
International - Team 5
Internal Revenue Service
2203 N. Lois Avenue, Suite 812
Tampa, FL 33607

Re: Juan D. Reyes and Catherine Reyes
Taxpayer Identification Number: XXX-XX-0937
Report of Foreign Bank and Financial Accounts (FBAR)
Forms 13449
Statement of Specified Foreign Financial Assets
Forms 8938

Dear Ms. Groen:

I write on behalf of Juan D. Reyes and Catherine Reyes concerning the Form 13449, Agreements to Assessment and Collection of Penalties under 31 USC 5321(a)(5) and 5321 (a)(6) - the FBAR penalty assessments - which you have prepared. They appreciate very much the proposed 20% concession on the penalties, but believe the penalties of $420,051 each, or a total of $840,102, are excessive given the factual circumstances and threaten their old age. They have no pension or other retirement accounts and, at age 87, Dr. Reyes continues to work to support the two of them. In addition, a $20,000 liability remains to be resolved regarding failure to timely file Forms 8938 for the years 2011 and 2012 - $10,000 per year.

Not only is this penalty onerous and excessive, it is also very unlikely that the IRS would be successful with imposing the full 50% FBAR penalty. It is a penalty contrary to the current administration's regulatory reform policy and good government because of its severity.

As has been discussed, Dr. Reyes is from Nicaragua, a country which has been undergoing social unrest and economic turmoil for the past 50 years. At the time of the Sandinista civil war of the 1970s, Dr. Reyes' parents, citizens of Nicaragua with no connection with the United States, put family funds into an account in his name for safekeeping in a Nicaraguan branch of Banco de Loudres y America del Sur, a predecessor of Lloyd's Bank of London. As the political situation in Nicaragua worsened, Lloyd's Bank felt its deposits there were not safe and moved the account to the UK and then Switzerland, all while still under the authority of Dr. Reyes' parents. After the parents' deaths,

ATLANTA   BOSTON   CHICAGO   HONG KONG   HOUSTON   LONDON   LOS ANGELES   MELBOURNE   NEW YORK   SACRAMENTO   SAN FRANCISCO   SHANGHAI   SYDNEY   WASHINGTON, D.C.



Ms. Krista Groen
August 1, 2019
Page 2

the account continued in the usual manner at Lloyd's Bank for the benefit of Dr. Reyes. When Dr. Reyes and Mrs. Reyes were told that they had U.S. reporting obligations with regard to that account, they brought the account to the U.S. and promptly applied to enter the Voluntary Offshore Disclosure Initiative and provided all information required under the Initiative.

With the submission of their "Voluntary Offshore Disclosure Package", Dr. and Mrs. Reyes paid $211,264.12 in back income tax, interest and 20% miscellaneous penalties. After audit of the amended returns for 2008, 2009 and 2010, an additional $12,878.26 in tax and interest was paid by Dr. and Mrs. Reyes. A total of $224,142.88 has been paid with respect to the income issues pertaining to the account

The Offshore (FBAR) Penalty under the Voluntary Offshore Disclosure Initiative was mathematically computed at 27.5 percent of the highest balance in the account, and was confirmed by Agent Chad Presnall to be $609,953.15. Dr. and Mrs. Reyes believed the Offshore Penalty to be excessive, and an amount that they could not pay under their financial circumstances. They opted out of the Voluntary Offshore Disclosure Initiative in the hope that they could discuss the circumstances surrounding the account and receive a reasonable penalty, not based solely on a mathematical computation.

After opting out of the Voluntary Offshore Disclosure Initiative, Dr. and Mrs. Reyes asserted that their failure to report the foreign account was not willful, submitted a Certificate of Non-Willful Conduct explaining the circumstances of the foreign account and submitted other memoranda and letters. Their position was rejected. To impose a willful civil FBAR penalty, the IRS carries the burden of proving, by clear and convincing evidence, that the taxpayer made a voluntary, intentional violation of a known legal duty.[1] Willfulness would be demonstrated by a person's knowledge of the FBAR requirements and an intentional decision not to comply with them. The reason for establishing and maintaining the foreign account was unrelated to U.S. income tax or reporting avoidance. The account was created by Dr. Reyes' parents in Nicaragua during a time of turmoil and risk in that country. After his parents' deaths, the offshore account continued, under the inertia of status quo, as it had in the past. The moneys funding the account were not from a U.S. source, and were not from criminal activities. This account was not created or maintained to avoid U.S. reporting requirements. When Dr. and Mrs. Reyes realized that there were U.S. reporting requirements, they closed the foreign account, entered the Voluntary Offshore Disclosure Initiative and submitted back FBAR reports.

The IRS has asserted incorrectly that the failure to timely file FBAR reports was willful, under the concept of willful blindness. Based on inference from facts and circumstances, it was found that that Dr. and Mrs. Reyes had made a conscious effort to avoid learning about the FBAR requirements. In Global-Tech Appliances, Inc., et. Al. v. SEB S.A.[2], the U.S. Supreme Court held that to prevail on a willful blindness theory, a plaintiff must establish that the defendant subjectively believed that there was a high probability that a fact existed and took deliberate actions to avoid learning of that fact.

---

[1] ILM 200603026, Doc. 2006-1196, 2006 TNT 14-4; IRM 4.2.6.26.5.3 (7/1/2006).
[2] 79 U.S.L.W. 2604 (May 31, 2011)



Ms. Krista Groen
August 1, 2019
Page 3

They did not know the requirements, in fact, believed the account, created by non-U.S. persons with non-U.S. assets, was not subject to any U.S. requirements.

In Letters 3709 to each of Dr. and Mrs. Reyes, after their opting out, the examining agent determined that each "made a conscious, intentional decision not to learn about his/her FBAR filing requirements or to mention the foreign accounts and income to his/her preparer." The examining agent then stated:

> "The total willful blindness FBAR penalty for 2010-2012 per the method outlined in the IRM is $3,139,701. However, the Government believes that the penalty per the IRM is too severe. A more appropriate willful blindness FBAR penalty is $516,065 (50%) of balance as of 6/30/2012, FBAR filing due date), spread evenly over 2010 through 2012, therefore the penalty in 2010 is $175,022; 2011 is $175,022 and 2012 is $175,021."

A $516,065 FBAR penalty to each of Dr. and Mrs. Reyes, for a total of $1,021,120.

We agree that the total penalty under the IRM at $3,139,701 is too severe. As stated in the examiner's report:

> "The statutory maximum willful blindness FBAR penalty under 31 U.S.C. §5321(1)(5)(C) is the greater of $100,000 or 50% of the balance in the account at the date of the violation, the FBAR filing deadline."

The examiner is asserting a full 50% FBAR penalty, which is in fact $1,021,130, because $516,065 is being assigned against Dr. Reyes ad $516,065 is being assigned against Mrs. Reyes. The taxpayers filed joint returns for the years in question, and joint FBARs, when filed. The penalty is made to look less by dividing it between Dr. and Mrs. Reyes, and by allocating $175,022 to each of three years. The burden in finding willful blindness is on the IRS, a litigation risk for the IRS. The circumstances suggest no willfulness. While the IRS states that a full IRM computation at $3,139,701 is too severe, the $1,021,130 proposed based upon a 50% penalty also is too severe, as is the reduced FBAR penalty of $840,102 now offered.

There continues to be some uncertainty about the actual maximum limit for the FBAR penalties. An issue litigated at the District Court level as to whether, due to a failure to change a regulatory limit, the IRS is bound to a $100,000 maximum penalty. Although the most recent District Court decision, United States v. Schoenfeld[3], allowed the 50% maximum penalty, the District Court decisions, United States v. Walden[4], and United States v. Collcot[5], found the limitation to be $100,000. This split has yet to be resolved at the appellate level, providing an increased litigation

---

[3] 2019 WL 2603341, 123 A.F.T.R 2d 2019-2334, M.D. Fla June 25, 2019
[4] 325 F. Supp. 3d 1136 (D. Colo. 2018)
[5] 2018 WL 2271381 (W.D. Tex. May 16, 2018)



Ms. Krista Groen
August 1, 2019
Page 4

risk for the IRS in asserting a 50% penalty. This makes it very unlikely that the penalty imposed will stand up in court and thus is highly risky for the IRS to proceed with this position.

A full 50% FBAR penalty, in addition to the taxes, interest and 20% miscellaneous penalties and the $10,000 penalties for failure to file Form 8938 for tax years 2011 and 2012, substantially and unnecessarily impact on Dr. and Mrs. Reyes' financial wellbeing in their old age and could violate the Eighth Amendment Excessive Fine Clause, which has been found to be applicable to FBAR penalties, further increasing the litigation risk on the Internal Revenue Service. United States v. Bussel[6].

While Dr. and Mrs. Reyes assert that the late filing of FBARs was not willful and due to reasonable cause, they now know that they should have reported the foreign account and that an FBAR penalty will have to be paid. A penalty that cannot be paid and would ruin them is not justifiable. The combined $840,102 FBAR penalty against them is excessive. Collection proceedings would result in complete impoverishment in old age. The mathematical determination of 27.5% of the highest account balance under the Voluntary Offshore Disclosure Initiative was too high and an amount they could not pay. They opted out and even with a 20% concession as to the penalties initially determined, this penalty is over $200,000 more than that determined using the 27.5% mathematical formula of the Voluntary Disclosure penalty. That is a punishment that is unreasonable.

With respect to the Form 8938, Dr. and Mrs. Reyes did not understand they had a reporting obligation as U.S citizens with respect to an offshore account created by his parents, who were not U.S. persons, with non-U.S. source funds. Believing that the account had no U.S. connections, they did not report the account to their longstanding accountant, and he had no reason to believe that a Form 8938 was necessary for either 2011 or 2012. Once the taxpayers realized their obligation regarding the account, they took steps to disclose the account to the IRS. They informed their accountant and going forward Form 8938 for 2013 was filed timely.

Inadvertently, Form 8938 for the year 2011 was omitted from the amended return for 2011 filed with the Voluntary Disclosure Package. A Form 8938 was included with the amended return for 2012. Dr. and Mrs. Reyes had directed the Offshore Disclosure submission include full compliance with all requirements but there was confusion as to the 2011 Form 8938 filing.

In addition, when the amended return for 2011 was reviewed by the IRS as part of the Offshore Voluntary Disclosure Initiative, no mention by the IRS examiner was made as to the missing Form 8938, nor request made for a 2011 Form 8938. If a request had been made, the oversight would have been caught and a Form 8938 filed immediately. The 1040X for 2011 was filed with the IRS in September, 2014. No request for the 2011 Form was made until February 2018 after the Reyes had opted out and the 2011 Form 8938 was filed within 30 days of the first request by the IRS.

---

[6] 117 AFTR 2d 2016-439 (CD Cal. 2015)

58221854v.1



Ms. Krista Groen
August 1, 2019
Page 5

We request that the 8938 penalties for late filing be waived or taken into account in determining the FBAR penalties. Given the amount of the FBAR penalties, it is unlikely that additional 8939 penalties will be asked to be paid.

The IRS is not likely to prevail in court because of the underlying facts, burden of proof on the IRS and the split district court decisions as to the validity of a 50% maximum FBAR penalty. The penalties are against the current administration's good government and regulatory reform policies.

Sincerely yours,

SEYFARTH SHAW LLP

Douglas F. Allen, Jr.

DFA:ls
cc:   Dr. Juan D. Reyes
      Catherine Reyes

58221854v.1



Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-5549

Writer's e-mail
dallen@seyfarth.com

August 21, 2019

**VIA FACSIMILE (877-528-4975)**

Ms. Indu Subbiah
Internal Revenue Service

    Re:    Juan D. Reyes
            Taxpayer Identification Number 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
            Catherine Reyes
            Taxpayer Identification Number 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
            Report of Foreign Bank and Financial Accounts (FBAR)
            Forms 13449

Dear Ms. Subbiah:

    Thank you very much for the opportunity to have a conference call last week.

    As we explained on the call, our issue is not the imposition of an FBAR penalty for failure to disclose their foreign account at Lloyds TSB Bank plc but rather how much in penalties Dr. and Mrs. Reyes are asked to pay, without being financially ruined. Dr. Reyes continues to practice medicine in clinics in the Bronx, New York, a very depressed area of New York City. His practice does not generate a substantial income, as many of his patients are unable to pay medical expenses. He is 87 years old, and how long he can continue to practice is open to question. Mrs. Reyes is a homemaker. They have no pension or other retirement plan to provide income on Dr. Reyes retirement, other than Social Security.

    When they submitted their Voluntary Disclosure Package of Information in September, 2014, pursuant to their obligation under the 2012 Offshore Voluntary Disclosure Initiative, they included a Penalty Computation Worksheet (Form 14453) computing the Offshore Penalty at $609,957.15, using a 27.5% computation rate. The Offshore Penalty of $609,957.15 was confirmed by Agent Chad Presnall, the Agent reviewing their Disclosure Package.

    When their Offshore Disclosure Package was submitted, they paid $211,264.17 in income tax deficiencies, interest and a 20% penalty. Upon review, Agent Presnall determined that an additional $39,139.71 in deficiencies, interest and penalty was due. Dr. and Mrs. Reyes have paid a total of

WASHINGTON, D.C.  SYDNEY  SHANGHAI  SAN FRANCISCO  SACRAMENTO  NEW YORK  MELBOURNE  LOS ANGELES  LONDON  HOUSTON  HONG KONG  CHICAGO  BOSTON  ATLANTA



Ms. Indu Subbiah
August 21, 2019
Page 2

$250,403.88 with respect to income tax under the Offshore Disclosure Initiative, which, while not an FBAR penalty, came out of their pockets and was for them a very significant sum.

The Offshore Penalty, $609,957.15, was derived by mathematical computation, without an opportunity to discuss the facts of the account or their individual circumstances. They opted out, aware of the potential consequences, but with the hope that they could explain the circumstances of the account - funded by Dr. Reyes' parents out of funds in Nicaragua, seeking to preserve funds for Dr. Reyes at a time of instability and unrest in that country. Instead of receiving a penalty that they in reality could pay, even with Ms. Groen's offer of a 20% discount of penalties calculated at the maximum 50% rate, the penalties total $840,102, or $420,051 to each spouse. They could not pay the $609,957.15 Offshore Penalty. The $840,102 penalties, $203,144.85 over the Offshore Penalty calculation is effectively a punishment for trying to reach an equitable solution. In addition, their legal costs and other expenses have continued to increase.

After soul searching, analysis of their assets, income and borrowing ability, Dr. ad Mrs. Reyes would like to propose that the FBAR penalties be set at 13% of the highest aggregate account balance shown on the Form 14453 Penalty Computation Worksheet, or a total of $288,343.38 (13% of $2,218,026). A copy of the Form 14453 is attached for your reference.

This is a devastating amount for Dr. and Mrs. Reyes, but an amount which can be paid. A higher amount will result in ruin in their old age. An error has been made, a penalty is deserved, but the penalty should reflect the facts and circumstances of the error. The penalty we propose is a very substantial penalty for people in Dr. and Mrs. Reyes position. It is a more than satisfactory warning to them and to people in similar circumstances. A penalty that results in poverty in their old age is excessive, and cannot be consistent with public policy or the intent of the law.

We appreciate you taking the time to help resolve this matter.

Please let me know if you have any questions, however, I will not be available Monday, August 26 through Wednesday, August 28.

We would like to close this matter and have the Reyes have peace of mind in their old age.

Sincerely yours,

SEYFARTH SHAW LLP

Douglas F. Allen, Jr.

DFA:ls
cc:   Ms. Krista Groen (via Fax 855-510-0779)
      Juan D. Reyes, III
      Dr. and Mrs. Reyes